CITY OF NORRIS

*v.*

MILES H. BRADFORD.

(*Knoxville*, September Term, 1958.)

Opinion filed December 12, 1958.

Petition for rehearing denied January 23, 1959.

FRANK W. WILSON, WILSON & JOYCE, Oak Ridge, for appellant.

JESSE J. GUIN, JR., GUIN & COWAN, Oak Ridge, JAMES H. McCONKEY, Chattanooga, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Section 32.1(e) of the zoning ordinance of the City of Norris prohibits the erection of fences in the front yards of residences in districts which the ordinance has designated as residential, unless its Board of Zoning Appeals, acting under the authority of Section 32.2(i) gives its permission. In that event, the height of such front yard fence is limited to three (3) feet. The Chancellor adjudged this prohibition to be a violation of the due process clauses of the Tennessee Constitution, Article 1, Section 8, and of the 14th Amendment to the Federal Constitution, respectively, in that it is an attempt, in the Chancellor's opinion, to exercise the police power of the sovereign "for purely esthetic considerations". He so interpreted the effect of the no fence provision of the ordinance. The City of Norris has appealed.

The only decisions which any one connected with this case, Court of Solicitors, has been able to find wherein is raised the question as to the validity of a prohibition or regulation in a zoning ordinance of the erection of fences within a given zoned district are the two cases cited in the briefs of solicitors, to-wit, the North Carolina case of *In re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706, and the Wisconsin case of *Williams v. City of Hudson,* 219 Wis. 119, 262 N.W. 607. The Wisconsin case considered a regulation as to the type of fence designated to be constitutionally invalid. In the North Carolina case there were considerations additional to that which might be considered esthetic only. Neither case is much in point here.

In so far as the ordinance of the City of Norris prohibits the owner of a residence from erecting a fence across his front yard, to that extent this ordinance deprives such owner of one of the normal uses of his property, and without being paid for such deprivation. Such proposed prohibition can only be justified, therefore, by virtue of the police power of the sovereign.

The exercise of the police power can be invoked only when the deprivation of such use is deemed with reason by the Legislature "expedient to promote and protect the safety, health, morals, comfort and welfare of the people." The judiciary may interfere with such decision of the Legislature only if it finds that there is no reasonable connection or relation between the limitation imposed and the public safety, health, morals, comfort and welfare of the people. *Spencer-Sturla Company v. City of Memphis,* 155 Tenn. 70, 290 S.W. 608; *Meador v. City of Nashville,* 188 Tenn. 441, 220 S.W.2d 876.

As is apparent from that above stated, two questions which must be determined in the instant case are (1) what is the result to the people or community as a unit of the no-fence provision of the City of Norris zoning ordinance, and, (2) if such result be esthetic only, is such prohibition a legitimate exercise of the police power of the sovereign? If not, the provision must be adjudged invalid.

The ordinance permits "fences and walls not to exceed six feet in height" along the side yard and the rear yard. It defines the front yard as extending across the lot "between the principal building and the front lot line".

In so far as it affects the community as a unit, this Court is unable to imagine any good that may be bestowed, or any evil that may be prevented, by the absence of a fence in the front yard of a residence while allowing one in its side and back yard other than the thought that the absence of such front yard fence might be regarded as a physical situation which adds to the beauty of this residential section as one looks thereon in traveling through its streets.

In so far as this Court can conceive, no function of the City in the care of its streets will be interfered with by the existence of a fence on the front property line of the residence or the extension of such fence on either side to a point in line with the front of the residence. The traveling rights of the public cannot possibly be involved. The absence of such fence neither adds to nor lessens any traffic hazard. Nor does such absence increase or diminish any fire hazard. It can have no effect upon congestion. Nor will the presence or absence of such a fence, in so far as can be perceived, detract from, or add anything to, the

safety, morals, health or well being of the people as a unit in any respect, in so far as can be reasonably anticipated.

It must, therefore, be concluded that the sole accomplishment of the prohibition in question is supposedly to increase the physical beauty of this residential section. That is, the result of the exercise of the police power in the enactment of this provision is purely esthetic, as found by the Chancellor. So we reach the question of whether the prohibition of such ordinary use by a property owner of his real estate is within the limitations of the police power of the sovereign when the result of such prohibition is solely esthetic.

The only direct declaration of a Tennessee Court which we find upon the question is *State v. Newton,* 3 Tenn.Civ. App. 93, 106-107, where the Court says:

" 'But if the purpose were purely aesthetic, the impairment of property rights, even upon payment of compensation, would not pass unchallenged.' Freund on Police Power, Section 181. * * *

"It is too well settled to require further citation of authorities, that mere aesthetic considerations form no ground upon which to pass an ordinance."

Text writers and decisions of Courts of last resort of other jurisdictions support,—overwhelmingly, it seems,—the foregoing statement of our Court of Civil Appeals, in so far as it applies to a zoning ordinance.

The text of 16 C.J.S. Constitutional Law sec. 195, pages 939-940, after observing that esthetic considerations, if other valid reasons exist, may be considered, then con-

tinues, with citation of numerous authorities in support, as follows:

"Nevertheless, it is held that esthetic conditions alone are insufficient to support the invocation of the police power, * * *.''

58 American Jurisprudence, page 959, Zoning, Section 30, reads thus, citing cases:

"The rule generally supported is that the zoning power may no be exercised for purely esthetic considerations. * * A reason submitted for the general principle that the zoning power may not be exercised for purely esthetic considerations is that while public health, safety, and morals, which make for the public welfare, submit to reasonable definition and delimitations, the realm of the esthetic varies with the wide variation of tastes and culture."

This text observes that the question "cannot be said to be conclusively settled".

The cases holding esthetic considerations alone will not justify the exercise of the police power in zoning cases are numerous. References to only a few thereof will suffice, and prevent an unduly lengthening of this opinion.

In the Massachusetts case of *In General Outdoor Advertising Co. v. Department of Public Works*, 289 Mass. 149, 193 N.E. 799, 814, 815, the Court said:

"It has been decided quite generally, if not universally, by courts in which the question has been raised, that aesthetic considerations alone or as the main end do not afford sufficient foundation for imposing limi-

tations upon the use of property under the police power.''

See also *Spann v. Dallas,* 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387; *Appeal of White,* 287 Pa. 259, 134 A. 409, 53 A.L.R. 1215, 1220; *State Bank & Trust Company v. Village of Wilmette,* 358 Ill. 311, 193 N.E. 131, 96 A.L.R. 1327, 1333-1334.

Courts very properly have placed a liberal construction in favor of the extent of the legal authority of the Legislature or municipality to which such authority is delegated in exercising the police power of the sovereign. This is because the Court recognizes that such police power ''is of vast and undefined extent, expanding and enlarging in the multiplicity of its activities as exigencies demanding its service arise in the development of our complex civilization.'' *Spencer-Sturla Co. v. City of Memphis,* 155 Tenn. 70, 84, 290 S.W. 608, 613. But ''there must in the very nature of things be some limit to it, for otherwise the guaranties of written Constitutions would be little more than mere precatory and directory suggestions without force or life, affording to the citizen only a false and illusory protection against the invasion of his rights by the state, and his security would depend, not upon constitutional guaranties, but upon the will of the state in exercising an unlimited police power.'' *Goldman v. Crowther,* 147 Md. 282, 128 A. 50, 54, 38 A.L.R. 1455, 1460.

The police power inherent in the sovereign is born of necessity for the protection and advancement of the public safety, health, morals and natural well being of its people. If a given exercise of such power in forbidding a natural use of one's realty fails to accomplish that re-

sult, then the proposed exercise thereof is or no validity. Under practically all the authorities there falls within this invalid class those provisions of a zoning ordinance which accomplishes a result which is solely esthetic.

Since Section 32.1(e) of the zoning ordinance of the City of Norris accomplishes a result that is solely esthetic in forbidding the erection of a fence across the front yard of a residence premises, it follows that this section of the ordinance is a violation of the constitutional provisions mentioned; hence, invalid.

The decree of the Chancellor so holding will be affirmed with costs adjudged against the City of Norris.