JEANETTE HAGAMAN et al., Complainants, Appellees, v. ARTHUR P. SLAUGHTER, Defendant, Appellant.—354 S. W. (2d) 818.

Eastern Section. June 27, 1961.

Petition for Certiorari Denied by Supreme Court, February 8, 1962.

Curtin, Haynes & Winston, Bristol, for appellant.

Lyle Burrow, Bristol, for appellees.

McAMIS, P. J.   Arthur P. Slaughter appeals from a decree enjoining him from operating a junk yard near the residences owned or occupied by complainants.

The bill alleges that defendant was operating a junk yard in such a way as to cause rats and insects, particularly mosquitoes, to breed in large numbers; that defendant's property had become a hazard to children playing in the neighborhood and that the operation of defendant's junk yard had depreciated the value of nearby property.   It was charged that defendant's operations constituted an actionable nuisance.

The bill further alleged that defendant's business was being carried on in violation of an ordinance of the City of Bristol providing:

"An ordinance to regulate junk yards within the City of Bristol, Tennessee, in order to prevent their becoming public nuisances and/or menaces to the public health.

"Section I.   Be it ordained by the City of Bristol, Tennessee, that all junk yards within the City of Bristol, Tennessee, shall be operated and maintained subject to the following regulations:

"(1) All junk stored or kept in such yards shall be so kept as that it will not catch and hold water in which mosquitoes may breed and so that it will not constitute a place or places in which rats, mice, or other vermin may be harbored, reared or propogated.

"(2) All such junk yards shall be enclosed within close fitting plank or metal solid fences touching the ground on the bottom and being not less than 6 feet in height, such fence to be so built as that it will be impossible

for stray cats and/or stray dogs to have access to such junk yards.

"(3) Such yards shall be so maintained as to be in a sanitary condition and so as not to be a menace to the public health or safety."

Defendant filed an answer denying the factual allegations of the bill except the charge that he had not fenced his property and insisting that since he was not engaged in buying or selling junk but was only storing it on his property his operations are not within the purview of the ordinance, but, if so, the ordinance is unconstitutional and void on the ground that municipalities are without power to regulate junk yards for purely aesthetic reasons.

After a hearing on oral testimony, the Chancellor decreed "that defendant desist from using the property described in the bill as a junk yard or dump; that he remove all junk and personal property of this nature from the premises within thirty days from this date; and that defendant be enjoined from using said property in the capacity in which it has been used as a dump or junk yard."

The first assignment complains that the Chancellor erred in holding defendant subject to the ordinance.

■ We find nothing in the ordinance limiting it to persons who buy and sell junk. Nothing is said about junk dealers. The proscription is against "junk stored or kept", except in a manner not to offend the provisions of the ordinance. The first assignment is overruled.

Defendant's next insistence is that, if applicable to an operation involving only the storage of junk, the ordinance is unreasonable and unconstitutional. City of Norris v. Bradford, 204 Tenn. 319, 321 S. W. (2d) 543, is cited as sustaining this insistence.

■ The opinion in that case as well as the cases there cited clearly hold that it is a proper exercise of the police power for a municipality to forbid the owner of property to use it for a purpose injurious to the safety, health, morals, comfort and welfare of the people. The opinion does hold that the police power of a municipality does not extend to the power to interfere with the normal use of property for purely aesthetic reasons.

■ A casual reading of the ordinance here involved demonstrates that its aims and purposes are directly concerned with the public health and welfare without regard to the unsightly appearance of junk yards. Under the rule recognized by the case cited and numerous others which could be cited, we must, therefore, hold the ordinance reasonable and a valid exercise of the police power.

The brief for defendant concedes that he has not complied with the ordinance and has stored "certain old steel, wood, auto tires, and other junk * * * about 25 feet back from the street and across the street from complainants and from most of their witnesses."

■ The great weight of the evidence sustains the findings of the Chancellor that the storage of junk on defendant's lot, in addition to becoming an eyesore, has caused mosquitoes and rats in large numbers to congregate and breed there and then cross the street and con-

verge around complainants' homes. The County Health Officer testified that because of the large number of mosquitoes and rats defendant's property has become a health hazard to the neighborhood. There is undisputed evidence that, as a result, property values have depreciated by about twenty-five per cent.

Defendant's final insistence is that his business is lawful and not per se a nuisance and that even if now operated in such a way as to constitute a nuisance the peremptory provisions of the decree should be modified to permit a continuation of his present use of the property by ridding it of mosquitoes and rats.

Defendant's testimony that it is possible to rid the property of rats and mosquitoes is uncorroborated and the fact that he has not attempted to do so must be taken either as creating doubt as to his ability, or his good faith intention to make his property conform to health standards. He says he cannot comply with the ordinance by building a fence because a railway siding runs through the property.

█ Upon first consideration, it would seem that since defendant admits his inability to comply with the ordinance, the mandatory provisions of the decree should stand. The rule is, however, that while a municipal ordinance may be looked to in determining whether an activity made unlawful by it constitutes a nuisance it is not conclusive of the question. An act may be unlawful and not constitute a nuisance and an act found to be a nuisance may or may not be violative of an ordinance or statute. 66 C. J. S. Nuisances sec. 9, p. 748.

█ The ordinance here involved speaks of preventing a condition which may become a nuisance. But it

does not in express terms make junk yards which fail to comply with its provisions a nuisance. The mere fact that an act is in violation of a municipal ordinance does not justify injunctive relief. To warrant such relief there must be an invasion of civil or property rights which cannot be adequately protected by other available remedies. The criminality of the act neither gives nor ousts jurisdiction in equity. 43 C. J. S. Injunctions sec. 151, p. 762.

■ We must, therefore, conclude that the defendant's operation cannot be enjoined as a nuisance purely on the ground of his admitted inability to fence his property as required by the ordinance.

We have no difficulty in concluding, however, that as previously operated it constitutes a nuisance which complainants are entitled to have abated.

■ A nuisance is defined in legal parlance as an act or the use of property which endangers the life or health of others, which violates the laws of decency or obstructs the reasonable and comfortable use of property. City of Nashville v. Nevin, 12 Tenn. App. 336.

■ "Every man or corporation must so use their own property as not to injure others. A nuisance would have this effect, and, therefore, may be prohibited." Samuels v. Mayor, etc., of City of Nashville, 35 Tenn. 298, 301.

A more difficult problem, however, involves the extent of the relief to be granted.

■ The storage of junk is not illegal nor does it per se amount to a nuisance. There is no proof that except for marring the appearance of the neighborhood

a junk yard cannot be operated without doing injury to neighboring residences. Offending the aesthetic sensibilities of persons living in the neighborhood, standing alone, is not enough to constitute a junk yard a nuisance. Joseph Eugene Burchfield et al. v. C. C. Kelly et al., Knox Equity, decided ——— day of ———, 1961, opinion by Cooper, J. And cf. City of Norris v. Bradford, supra.

Crabtree et al v. City Auto Salvage Company, 47 Tenn. App. 616, 340 S. W. (2d) 940, certiorari denied September 9, 1960, involved the operation of an automobile salvage yard. The bill sought and the Chancellor granted, an injunction completely enjoining the operation of the business as a nuisance. On appeal, in an opinion by Judge Shriver, it was held that since the business was not unlawful and did not constitute a nuisance per se the injunction should have been confined to the offensive features of the operation if that could be done and still allow the business to operate. We quote from the opinion:

"Ordinarily, a mandatory injunction is limited to the acts complained of, leaving the right to carry on the business in a proper and lawful manner, and the operation of a lawful business will not be enjoined without a clear showing that it is impossible or impracticable to eliminate its offensive features. Wright v. State, 130 Tenn. 279, 170 S. W. 57, 58, wherein the rule is stated:

" 'The conduct of the business itself should not be prohibited, unless it clearly appears that the plant cannot be operated without creating a nuisance.' "

"The operation of a legitimate business or industrial plant which constitutes a private nuisance may be en-

joined where it clearly appears that there is no other complete remedy for the injury done. But this should never be done if it is possible to avoid it while still giving the plaintiff the relief to which he is entitled. In such cases, the courts will go no further than is absolutely necessary to protect the rights of the complaining parties, and, if the business or plant can be so conducted as not to constitute a nuisance, the injunction should be limited to prohibiting the acts complained of which constitute the nuisance, leaving the defendant free to operate it in a lawful manner.'' 39 Am. Jur. 444, Nuisance, Section 172.

We think these principles must be held applicable here. It does not clearly appear that defendant cannot rid his place of rats and mosquitoes so that it will meet proper health standards. His own testimony is that rats and mosquitoes can be eliminated. In view of his past derelictions, however, we are not willing to foreclose further consideration of this question solely on the basis of his testimony.

The decree of the Chancellor unconditionally requiring defendant to discontinue his operations will be modified to allow such time as the Chancellor on the remand may in his discretion allow for eliminating rats and mosquitoes and making the premises conform to prevailing health standards. Proof may then be taken on the question and if defendant is able to show by a preponderance of the evidence that he has succeeded in effectually removing all hazards to the health, safety, comfort and enjoyment of complainants the injunction will be modified to permit the proper operation of his business without the offensive features above discussed.

■ In our discretion all costs accrued to this date will be taxed to defendant and surety on the appeal bond. Costs incident to the hearing of proof on the remand as above directed may also be taxed to defendant.

Except as modified the decree is in all respects affirmed.

Hale and Cooper, JJ., concur.