**MOBILE HOME CITY OF CHATTA-NOOGA et al., Appellants,**

**v.**

**HAMILTON COUNTY, Tennessee, Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 22, 1976.

Certiorari Denied by Supreme Court Feb. 7, 1977.

Certiorari Denied by United States Supreme Court June 13, 1977.

J. Troy Wolfe, Jr., Herbert A. Thornbury, Chattanooga, for appellants.

James F. Turner, Michael J. Mahn, Chattanooga, for appellee.

OPINION

GODDARD, Judge.

Mobile Home City of Chattanooga, Inc. and others, most of whom are mobile home dealers, Plaintiffs-Appellants, filed a suit for declaratory judgment in the Chancery Court for Hamilton County against Hamil-

ton County, Defendant-Appellee. Plaintiffs contend that a recently adopted resolution amending the zoning regulations of Hamilton County violated the provisions of both the Federal and State Constitutions. The Chancellor found the ordinance constitutionally permissible and entered an order dismissing the complaint, from which the Plaintiffs have duly perfected their appeal.

The amendment in question establishes single-unit mobile home districts, prescribes their minimum size, as well as the minimum frontage and area for building sites within the district. The Plaintiffs' principal objection is directed to that provision which provides that such districts shall not be smaller than five acres.

In this regard, it is the Plaintiffs' main position, as we understand it, that the ordinance bears no relation to the health, morals or safety of the community, and because it was adopted purely for esthetic purposes, may not be sustained. In *City of Norris v. Bradford*, 204 Tenn. 319, 321 S.W.2d 543 (1958), the Supreme Court dealt with an ordinance which prohibited fences along the front line of property, although permitting them, if their height did not exceed six feet, along the sides and rear lot lines. In striking down the ordinance as unconstitutional, the Supreme Court said (204 Tenn. at 325; 321 S.W.2d at 546):

> The police power inherent in the sovereign is born of necessity for the protection and advancement of the public safety, health, morals and natural well being of its people. If a given exercise of such power in forbidding a natural use of one's realty fails to accomplish that result, then the proposed exercise thereof is of no validity. Under practically all the authorities there falls within this invalid class those provisions of a zoning ordinance which accomplishes a result which is solely esthetic.

■ Conversely, when a zoning ordinance bears a reasonable relation to the public health, safety or morals, it must be sustained as a valid exercise of police power. *Davidson County v. Rogers*, 184 Tenn. 327, 331, 198 S.W.2d 812, 814 (1947), discusses

the question at some length, as well as defines the meaning of the word "reasonable" as used in this context:

> The defendants recognize that the exercise of the police power in furtherance of zoning restrictions has been validated repeatedly by former decisions of this Court, and they do not assail the Act of 1939, nor the general resolution passed in 1940. But they insist that the Resolution of April 1945 was arbitrary, unreasonable and unconstitutional.

Before considering the defendants' contentions, the very limited scope of judicial review must be kept in mind lest this Court in error, substitute its judgment for that of the Legislature. "It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the Legislature. In determining whether such act is reasonable the courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the state or federal Constitution." *Motlow v. State*, 125 Tenn. 547, 589, 590, 145 S.W. 177, 188, L.R.A. 1916F, 177.

We have said that when a Quarterly County Court is acting in its legislative capacity in matters political and municipal in character, that there will be no judicial review unless the action is clearly unconstitutional. *Donnelly v. Fritts*, 159 Tenn. 605, 609, 21 S.W.2d 619; *Gamble v. Paine*, 141 Tenn. 548, 551, 552, 213 S.W. 419; *County Court of Obion v. Marr*, 27

Tenn. 634; *Carey v. Justices of Campbell County*, 37 Tenn. 515.

We may not say that such legislative action is "unreasonable" when it is taken in pursuance of a specific enabling Act, as here. *Rutherford v. City of Nashville*, 168 Tenn. 499, 508, 79 S.W.2d 581. That the passage of a zoning regulation such as the one before us, is a valid exercise of the police power, has long been settled in this State. *Spencer-Sturla Co. v. City of Memphis*, 155 Tenn. 70, 290 S.W. 608.

In the case of *Village of Euclid et al., v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, 311, 54 A.L.R. 1016, which established the same rule for the United States, it was said:

> "If the validity of the legislative classification for zoning purposes be *fairly debatable*, the legislative judgment must be allowed to control. *Radice v. People of State of New York*, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690 [694]."

> "One who assails classification made in a police measure must carry the burden of showing that it does not rest upon any reasonable basis, but that such classification is essentially arbitrary. *Thomas v. State*, 136 Tenn. 47, 188 S.W. 617; *City of Memphis v. State ex rel. [Ryals]*, 133 Tenn. 83, 179 S.W. 631, L.R.A. 1916B, 1151, Ann.Cas. 1917C, 1056; *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177, L.R.A. 1916F, 177.

> "*If any possible reason can be conceived to justify such classification, it will be upheld and deemed reasonable. Peters v. O'Brien*, 152 Tenn. 466, 278 S.W. 660; *Hunter v. Conner*, 152 Tenn. 258, 277 S.W. 71; *Caldwell & Co. v. Lea*, 152 Tenn. 48, 272 S.W. 715; *Bank of Commerce & Trust Co. v. Senter*, 149 Tenn. 569, 260 S.W. 144; *Ogilvie v. Hailey*, 141 Tenn. 392, 210 S.W. 645." *Darnell v. Shapard*, 156 Tenn. 544, 553, 3 S.W.2d 661, 663. (Italics ours.)

If the reasonableness of the legislative classification be "fairly debatable," it must be upheld. *Foster v. Mayor of City of Beverly*, 315 Mass. 567, 53 N.E.2d 693, 151 A.L.R. 737; *Simon v. Town of Needham*, 311 Mass. 560, 42 N.E.2d 516, 141 A.L.R. 688.

Neither the "motives" of the County Court (*Soukup v. Sell*, 171 Tenn. 437, 441, 104 S.W.2d 830; *Madison v. City of Maryville*, 173 Tenn. 489, 493, 121 S.W.2d 540), nor the methods (*Leonard v. Haynes*, 82 Tenn. 447; *Donnelly v. Fritts*, 159 Tenn. 605, 21 S.W.2d 619) are subject to our review.

*Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70 (1952) and *Meador v. City of Nashville*, 188 Tenn. 441, 220 S.W.2d 876 (1949) are also in accord.

· ■ While it does not appear that an appellate court in this state has dealt with the precise question, the question has been considered in other states. The appellate courts of New York and Minnesota, in criminal cases involving statutes requiring trailers to be placed only in trailer parks, repelled a constitutional attack and found the statutes bore a reasonable relationship to the public good:

> In view of sewage, water supply, waste disposal and other problems connected with the maintenance of trailers, permitting them in trailer parks where these public services can be strictly supervised indeed bears a relationship to the public health and welfare.

*People v. Clute*, 47 Misc.2d 1005, 263 N.Y. S.2d 826, 830 (1965).

Other jurisdictions which have dealt with this question have generally upheld zoning ordinances banning trailer homes from some districts if another area within the municipality is zoned as a trailer park. In other words, while trailer homes cannot be completely banned from a municipality, they may be restricted to established trailer camps. Decisions of these jurisdictions are discussed extensively in Annotation, 96 A.L.R.2d 232, § 5. . . . By limiting trailer homes to designated parks, cities have found it easier to provide police and fire protection and to regulate health conditions, as well as to provide necessary services such as

water, sewage, and lighting. See, Annotation, 96 A.L.R.2d 232, § 2. For these reasons, Blaine's zoning ordinance relating to mobile homes does aid in the protection of the health, safety, and general welfare of the people and was a valid exercise of the police power.

*State v. Larson*, 292 Minn. 350, 195 N.W.2d 180, 184 (1972).

■ It is true as pointed out by Plaintiffs that the ordinance treats mobile homes differently from conventional residences. The fact of the matter is they are different, and because they are, a different treatment is warranted. We also recognize that this ordinance restricts landowners in the use of their property without compensating them. This however is not the test, because the same can be said of any zoning regulation.

■ Finally, we concur in the concluding remarks of the Chancellor's memorandum opinion:

Arguments raised by the plaintiffs about the cost of obtaining rezoning for mobile homes, the requirement of five acres for mobile home districts and other related matters are properly addressed to legislative bodies and are not legal issues, and the Court cannot substitute its judgment for that of the County Council. The Court holds that the Zoning Resolution is a reasonable exercise of the police power of Hamilton County and is constitutional.

For the foregoing reasons the assignments of error are overruled and the Trial Court affirmed. The costs are taxed to the Plaintiffs and their sureties.

PARROTT, P. J., and SANDERS, J., concur.