STATE of Tennessee, Plaintiff-Appellee,

v.

Elmer SMITH, Jr., Defendant-Appellant.

Supreme Court of Tennessee.

July 6, 1981.

Gary R. Wade, Sevierville, for defendant-appellant.

Al Schmutzer, Jr., Dist. Atty. Gen., Richard Vance, Asst. Dist. Atty. Gen., Sevierville, Claudius C. Smith, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., of counsel.

## OPINION

HARBISON, Chief Justice.

Appellant was convicted for violation of statutes regulating the operation of automobile graveyards or junkyards. T.C.A. §§ 54–5–901 to 905 and T.C.A. §§ 54–20–101 to 121. His conduct consisted of establishing an automobile junkyard after 1965 within a prohibited distance from a state highway and operating the same without a proper permit or license. We affirm the convictions.

Appellant concedes that both sets of statutes apply to his property and his business site if they are valid. The earlier statutes, T.C.A. §§ 54–5–901 to 905, were enacted in 1965. They prohibit the establishment of "automobile graveyards" within one thousand feet of certain "through routes" after their effective date. T.C.A. § 54–5–902. The later statutes, T.C.A. §§ 54–20–101 to 121, regulate junkyards in general, including "automobile graveyards" and "vehicle junkyards," as well as other types of waste or junk storage such as garbage dumps and sanitary fills. Apparently there is no insistence that the later statutes repealed or modified the earlier ones insofar as they affect appellant.

Appellant insists that both sets of statutes are unconstitutional and represent an improper exercise of the state's police pow-

er upon the single ground that both rest entirely upon aesthetic considerations.[1]

These proceedings were instituted by the issuance of criminal warrants in the General Sessions Court of Sevier County. A separate warrant was issued under each set of statutes. Appeal was taken from a conviction and fine imposed under each warrant. Almost no evidentiary record was developed in the circuit court. The case was disposed of there upon a short stipulation of facts and very brief testimony from appellant.

The stipulation established that appellant commenced his business in February 1980 upon a five-acre leased tract. The property fronts upon State Highway 66, and the business is located within one thousand feet of this highway. Appellant did not have a permit as required by T.C.A. § 54–20–113. The junkyard is situated within view of the highway. The property is not zoned or otherwise designated by any local governing body for use as a vehicle junkyard. The "area in question" where the tract is situated is sparsely populated, unincorporated, rural and consists primarily of farm land. The size of the "area" and its proximity to a city or town are not specified in the stipulation. There are statements of counsel that the highway is rather well-traveled and leads to a reservoir and recreational part which "is heavily used in the summer time." It was stipulated that the topography is such that a fence would not substantially hide the junkyard from public view, although one portion near a barn could be concealed by a fence. There is an unsworn statement in the record by patrolman that the barn is upon a hillside, situated two hundred fifty to three hundred yards from the highway. A used car lot and a "tire place" exist within three-tenths of a mile from the site.

Upon this record appellant apparently insists that he is entitled to a finding of fact that, as applied to his business, the only purpose served by the regulatory statutes is an aesthetic one, to enhance the beauty of the landscape. The evidence does not justify such a finding.

In enacting the most recent of the statutes, the General Assembly included the following statement:

"For the purpose of promoting the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in public highways, and to preserve and enhance the scenic beauty of lands bordering public highways, it is hereby declared to be in the public interest to regulate and restrict the establishment, operation and maintenance of junkyards in areas adjacent to the interstate and primary systems within this state. The general assembly hereby finds and declares that junkyards which do not conform to the requirements of this chapter are public nuisances." T.C.A. § 54–20–102.

This statute was enacted in 1967. By supplementary provisions effective July 1, 1974, vehicle junkyards were prohibited within one thousand feet of a state roadway without a current vehicle junkyard concealment control permit, issued by the Commissioner of Safety, except those located in areas zoned for industrial use. T.C.A. § 54–20–113.

Only if we could say that these statutes have no reasonable relation whatever to safety, health, welfare, public investment in highways or convenience of public travel, as applied to the site in question, would we reach the broad proposition asserted by appellant that the statutes promote aesthetic goals only. There is no such factual showing in this record.

1. It is somewhat difficult for us to ascertain whether appellant contends that such statutes, under all circumstances, are invalid and that they could never be the subject of proper exercise of the police power, or whether he confines his attack to their application to him and his particular situation. We have concluded that his attack is limited to the application of the statutes to his case. We would certainly not be prepared to hold that the General Assembly lacks power ever to regulate junkyards, advertising and other enterprises along and adjacent to national and state roadways. *See e. g.*, T.C.A. §§ 54–17–108 to 112, regulating junkyards, advertising and trash disposal upon "scenic highways," and T.C.A. §§ 54–21–101 to 118, "The Billboard Regulation and Control Act of 1972."

From such brief evidence as is in it, we are not prepared to find that the regulatory statutes are totally and completely unrelated to highway safety, maintenance and other purposes referred to by the legislature which are not necessarily wholly aesthetic in nature.

Appellant relies principally upon the case of *City of Norris v. Bradford*, 204 Tenn. 319, 321 S.W.2d 543 (1958), in which this Court held invalid a local zoning ordinance prohibiting fences on residential lawns fronting on streets. In the course of that opinion the Court did state that exercise of the police power based solely upon aesthetic considerations could not be sustained. Appellant also relies upon language contained in *Hagaman v. Slaughter*, 49 Tenn.App. 338, 354 S.W.2d 818 (1961), in which the Court sustained an injunction against the operation of a junkyard as a public nuisance, but modified the relief granted by the chancellor so as to allow further operations if they could be conducted without certain offensive aspects.

Appellant seems to concede that if other factors than aesthetics, such as traffic safety and the protection of the public investment in highways, did justify the statutory regulations involved here, then aesthetic considerations, in addition, might be taken into account by a legislative body. As stated, appellant has not eliminated such other factors in this case, nor has he contradicted the legislative declaration that those factors prompted the General Assembly to enact the statutes.

It is true that there are limits upon the exercise of the police power of state and local governments. *See Livesay v. Tennessee Board of Examiners in Watchmaking*, 204 Tenn. 500, 322 S.W.2d 209 (1959). However, in the case of *Ford Motor Co. v. Pace*, 206 Tenn. 559, 564, 335 S.W.2d 360, 362 (1960), upholding a statute regulating the licensing of automobile dealers and salesmen, this Court said:

"In considering the question, whether or not the Legislature has the right to enact such a statute under the police power, we must take into consideration and look at things in the light of the social and economic conditions existing at the present time rather than at the time our Constitution was adopted. Legislative power is not static and helpless but arises to adjust and face new conditions as they appear to affect the people of the State. Of course, the Legislature of the State cannot prohibit an ordinary business but it may, however, regulate the business to promote the health, safety, morals or general welfare of the public. The guarantees of the Constitution imply the absence of arbitrary restraint, but not immunity from reasonable regulations and prohibitions imposed in the interest of the people of the State."

■ Certainly a legislative declaration of the need for regulation is not conclusive upon the courts. Nevertheless, as stated in the *Pace* case, *supra*:

"It makes no difference what our personal views may be as to the necessity of such legislation as that herein, the fact remains that the Legislature of the State concluded that a reasonable basis existed for its enactment, and, there being some foundation in fact to justify this legislative action, the Court is powerless and it wouldn't be right on our part for us to substitute our judgment for that of the Legislature even if we cared to do so." 206 Tenn. at 567–68, 335 S.W.2d at 363.

*See also Chapdelaine v. Tenn. State Bd. of Examiners,,* 541 S.W.2d 786 (Tenn.1976); *Mobile Home City of Chattanooga v. Hamilton County*, 552 S.W.2d 86, 88 (Tenn.App. 1977), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977) (if reasonableness of legislative classification be "fairly debatable" it must be upheld).

Appellant had ample opportunity in this case to offer evidence that, as applied to his property, the legislation served nothing but aesthetic purposes. He wholly failed to do so. There are no photographs, testimony describing the highway, its intersection with the road leading to appellant's business, the nature and scope of that business, the area covered by the junkyard or traffic into and out of the premises. We simply

cannot conclude from the record that aesthetics alone constitute the only conceivable basis for application of the statutes to appellant.

■ Wholly apart from this, however, as pointed out by appellee, in recent years most courts which have considered junkyard regulations similar to those involved here have had no difficulty in sustaining them as a proper exercise of the police power of a state or local government, even if scenic or aesthetic considerations have been found to be the only basis for their enactment. *See Rotenberg v. City of Ft. Pierce*, 202 So.2d 782 (Fla.App.1967); *Jasper v. Commonwealth*, 375 S.W.2d 709 (Ky. 1964); *Deimeke v. State Highway Commission*, 444 S.W.2d 480 (Mo.1969); *National Used Cars, Inc. v. City of Kalamazoo*, 61 Mich.App. 520, 233 N.W.2d 64 (1975); *State v. Buckley*, 16 Ohio St.2d 128, 243 N.E.2d 66 (1968); *Farley v. Graney*, 146 W.Va. 22, 119 S.E.2d 833 (1960).

Although some authorities to the contrary may be found, we find these cases to be better reasoned and more in accord with modern concerns for environmental protection, control of pollution and prevention of unsightliness. We believe that the views expressed in *City of Norris v. Bradford, supra*, must be considered in the light of the facts of that case and that they cannot be literally applied to all of the myriad concerns and problems facing state and local governments at this time.

As appellee further points out, there has been a strong trend toward upholding state and local regulation of land use in other areas than junkyard control, even though aesthetic considerations constitute the sole or primary reason for the legislation. The rule stated in *City of Norris v. Bradford, supra*, in our opinion, no longer represents the prevailing view on that subject. In addition to the authorities previously cited, *see Penn. Central Transport Co. v. New York City*, 438 U.S. 104, 129, 98 S.Ct. 2646, 2661, 57 L.Ed.2d 631 (1978) (land use restrictions may be enacted "to enhance the quality of life by preserving the character and desirable aesthetic features of a city");

*Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) (legislature may determine that "the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled"); *Stone v. City of Maitland*, 446 F.2d 83, 89 (5th Cir. 1971) (zoning ordinances restricting size and location of service station sites upheld—"enhancement of the aesthetic appeal of a community is a proper exercise of police power"); *Sunad, Inc. v. City of Sarasota*, 122 So.2d 611 (Fla. 1960) (aesthetic considerations sufficiently justified regulating advertising signs, but regulation in question held unreasonable and discriminatory on particular facts); *John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.*, 369 Mass. 206, 339 N.E.2d 709 (1975) (off-premises advertising signs prohibited for purely aesthetic reasons; ordinance held valid exercise of police power); *Mississippi State Highway Commission v. Roberts Enterprizes*, 304 So.2d 637 (Miss. 1974) (Outdoor Advertising Act upheld); *Westfield Motor Sales Co. v. Town of Westfield*, 129 N.J.Super. 528, 324 A.2d 113 (1974) (limitation upon size of signs in residential areas held valid); *People v. Stover*, 12 N.Y.2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272 (1963) (prohibition of clotheslines in front yards of residential neighborhoods sustained); *see also* 8 McQuillin, *Municipal Corporations* § 25.31 (3d ed. 1976).

We therefore are of the opinion that in modern society aesthetic considerations may well constitute a legitimate basis for the exercise of police power, depending upon the facts and circumstances. Since that factor is by no means the only one shown to have controlled the enactment and enforcement of the statutes now under consideration, however, we have no hesitancy in upholding the validity of the statutes in general and their application to appellant in this case.

The judgment of the circuit court is affirmed. Costs incident to the appeal are taxed to appellant; the cause will be remanded to the trial court for collection of costs accrued there.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.