IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2011

## TOWN OF SMYRNA, TENNESSEE v. PERRY BELL

**Appeal from the Circuit Court for Rutherford County**
**No. 59935      J. Mark Rogers, Judge**

**No. M2010-01519-COA-R3-CV - Filed October 31, 2011**

The Town of Smyrna annexed land in 1991 that included a retail furniture store. The owner of that business kept a number of tractor-trailers parked on his property to store some of his inventory. Several years after the annexation, the town cited the owner in an attempt to enforce a municipal ordinance regulating the parking of tractor-trailers on commercially zoned property. The municipal court ruled against the owner. He appealed to the Circuit Court, which held that the ordinance in question was a zoning regulation and that the owner's use of the tractor- trailers was protected by the grandfathering provisions of Tenn. Code Ann. § 13-7-208(b)(1). The town contends on appeal to this court that the ordinance is a property maintenance regulation rather than a zoning regulation and that the owner's use of the tractor-trailers is therefore not entitled to the protection of the grandfather clause. We agree, and we reverse the Circuit Court because the proof does not indicate that compliance with the ordinance would substantially interfere with the store owner's use of the property as a retail furniture business. Thus, it cannot be considered a zoning ordinance as applied to him under the standard established by our Supreme Court in *Cherokee Country Club v. City of Knoxville*, 152 S.W.2d 466 (Tenn. 2004).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Jeffrey L. Peach, Smyrna, Tennessee, for the appellant, Town of Smyrna, Tennessee.

Dicken E. Kidwell, Murfreesboro, Tennessee, for the appellee, Perry Bell.

## OPINION

### I. BACKGROUND

In 1982, Perry Bell opened Bell Furniture, a retail furniture store in Rutherford County, Tennessee. In 1986, Bell moved his store to its present location at 1517 New Nashville Highway. At the time he moved the store, the site was not a part of the town of Smyrna. In 1991, Smyrna annexed a tract of land that included the parcel where Mr. Bell's store is located. The land was zoned as commercial, so there were no legal impediments to Bell's continuing operation of the store.

Mr. Bell testified that since 1986 he has parked tractor-trailers on his property to store new furniture that he had not yet placed on his showroom floor. The trailers are not attached to any trucks and are not used for transport; their sole purpose is as storage space for Bell's excess furniture. On September 7, 2007, a Smyrna codes enforcement officer personally delivered a notice to Bell Furniture, which stated that the store was in violation of Smyrna Municipal Ordinance § 15-606 entitled, "Storage and Parking of Tractor Trucks and Tractor Trailers." That ordinance is part of the municipal code section on "Motor Vehicles, Traffic and Parking." It reads in relevant part,

> In any commercial zone, tractor trucks, whether the cab alone or with a trailer attached, tractor trailers, including trailers and semi-trailers, whether empty or loaded, not attached to a truck or tractor truck, which are not being used for or engaging in normal loading or unloading purposes, or for activities directly associated with normal trucking operations, shall not be parked or stored on a lot unless they are located in a completely enclosed space, which enclosed space shall include a roof, or are located behind the front setback line created by the building closest to the street right-of-way and unless such tractor trucks or tractor trailers are located behind a completely opaque fence. For purposes of this section an opaque fence shall not include a chain link fence with any type of panel, fence, or privacy weave. Any existing violations shall be brought into compliance within thirty days after notice. This section is intended to minimize undesirable and unsightly conditions and to ensure compliance with intended advertising regulations.

That first notice was followed up by delivery of a letter dated November 15, 2007 from the town to Mr. Bell. The letter reiterated that Mr. Bell was in violation of Ordinance 15-606 and gave him thirty days to remove the trailers from his property, warning him that

if he did not do so, he might be cited in the City Court and subject to fines and court costs.[1] Mr. Bell's attorney responded with a letter dated November 20, 2007, in which he stated that Mr. Bell was entitled to continue his use of the trailers under the grandfather clause and asserted that "[t]his matter was discussed in 1998 with Randolph E. Saylers, the then Codes Enforcement Officer, and it was agreed at that time that Mr. Bell was not violating any law."

Almost a year passed with no further attempt by the town to enforce its ordinance. Then, on October 14, 2008, the town sent Mr. Bell another letter, which was identical to its letter of November 15, 2007. The town subsequently issued a summons against Mr. Bell, which resulted in a hearing before the Municipal Court on August 13, 2009. Mr. Bell did not testify, but his attorney argued that because he has been continually operating his business at the store's present location since 1986, including the use of the tractor trailers as storage units, and since the city annexed the land in 1991, his use of the trailers is protected by the "grandfather clause," found at Tenn. Code Ann. § 13-7-208(b)(1). For its part, Smyrna argued that the ordinance in question was not a zoning regulation but rather a property maintenance provision and part of the building code and, thus, that Mr. Bell was not entitled to the rights protected by the statutory grandfather provisions.

After hearing arguments from both sides, the municipal court ruled in favor of the town, finding that Mr. Bell did not proffer sufficient evidence to prove that the regulation of trailers at his business would substantially affect his use of the land to the extent required to view the ordinance as a zoning ordinance. The court assessed a nominal fine of $1 against him "given the fact that the store may be entitled to the protection of Tenn. Code Ann. § 13-7-208, but simply failed to present supporting evidence at the hearing. Mr. Bell is required to bring the property into compliance with § 15-606 unless a higher court rules otherwise." Mr. Bell then appealed to the Circuit Court of Rutherford County.

## II. CIRCUIT COURT PROCEEDINGS

The Circuit Court heard the case on May 5, 2010. The only witnesses to testify were Codes Enforcement Officer Dennis Johnson and Perry Bell. Photographs of the trailers parked on Mr. Bell's property were entered into evidence during Mr. Johnson's testimony. They showed that many of the trailers were rusting and appeared to be unlocked, and that all were out in the open, with no fencing in sight.

An aerial photograph that was taken in 2007 was likewise entered into evidence. It showed that Mr. Bell's property is located at the intersection of New Nashville Highway and

---

[1]The letters did not mention the possibility of complying with the ordinance by moving the trailers to another portion of the property and placing them behind opaque fencing.

Overhead Bridge Road.[2] Mr. Johnson testified that because the property is on the corner, there are two front setbacks that the owner is required to comply with. The aerial photo showed about twenty trailers parked on the property, most of which were obviously in violation of the front setbacks created by the building. Mr. Johnson also testified that he believed that some of those trailers were added after 1997, but an aerial photograph purportedly taken in that year was not admitted into evidence because it could not be fully authenticated.

When Perry Bell took the stand, he testified that he had always paid all his taxes and obtained all the necessary business licenses for the operation of his business, and that he had been using trailers for his business since he first purchased the property in 1986. He also testified about a letter he received from the town in 1996 objecting to the use of trailers on his property. The letters about the matter subsequently exchanged between his attorney and former Codes Enforcement Officer Salyers were entered into evidence.

Mr. Bell's attorney's letter characterized the town's objection to his use of the trailers as concerning "certain zoning violations at his business." The letter asserted that because Mr. Bell had been parking trailers on his land since he first purchased it in 1986, he was entitled to continue doing so under the grandfathering provisions of Tenn. Code Ann. § 13-7-208(b)(1), despite any subsequent zoning changes. Mr. Bell's attorney then read to the court a portion of Mr. Salyer's response which declares that "[w]e are aware that your business existed prior to your annexation into the Smyrna city limits and that you are classified as having a grandfather status." But the attorney did not read the next sentence in the letter, which states, "[h]owever, the trailers that are being used as storage are portable and need to be moved to meet the setback requirements."

Mr. Bell acknowledged that the trailers he used were not full of furniture, but he asserted that there was at least some furniture in each trailer. He also testified that he keeps locks on all his trailers: "They are all locked. Every one of them. Unless somebody's cut the locks off of them. And we check them every day. And they were locked last night." His attorney asked him what would happen if he did not have the use of the trailers, and Mr. Bell responded, "I will be out of business. I couldn't run my business without my storage trailers." He was not asked whether moving the trailers behind the setback lines and enclosing them behind an opaque fence would have the same effect on his business.

On cross-examination, the town's attorney asked Mr. Bell to look at the photographs of the trailers that were entered into evidence. When asked to explain why no locks could

---

[2]The Bell Furniture property was outlined in yellow on the aerial photograph. Mr. Bell later testified that he also owned the lot adjoining one side of the property.

be seen on the rear doors of the trailers in many of the photos, he responded that the locks might have been placed higher on the doors of those particular trucks than was shown on the photos. Confronted by one photo that showed the entire expanse of a trailer's rear doors but no visible lock, he stated "I can't make it out – anyway, the lock is supposed to be right there, unless someone's cut it off." He also repeated his earlier testimony that "we lock every one of them every night." Mr. Bell was also asked whether anyone from the city has ever asked him to stop selling furniture at his store, and he answered in the negative.

The town argued at closing that the ordinance at issue was not a zoning regulation, but should rather be viewed as a "property maintenance" regulation, something akin to requiring that grass be kept cut below a height of two feet, and that Mr. Bell should be required to comply with the ordinance by either removing the trailers, moving them behind the setback line and putting an opaque fence around them or building a roofed structure to enclose them. For his part, Mr. Bell reiterated his argument that the ordinance is indeed a zoning regulation and therefore that his use of the trailers is protected by the grandfather clause. He cited the case of *Metropolitan Gov't of Nashville and Davidson County v. Buchanan*, No. M2004-01716-COA-R3-CV, 2006 WL 249512 (Tenn. Ct. App. Feb. 1, 2006)(no Tenn. R. App. P. 11 application filed) in support of that proposition.

The trial court announced its decision on May 13, 2010, and memorialized it in a judgment that was filed on June 11, 2010. The court ruled in favor of Mr. Bell, holding that the trailers were a necessary part of his business, that his use of the trailers was protected as a non-conforming use under the grandfathering statute, Tenn. Code Ann. § 13-7-208(b), and that he was therefore not required to comply with the ordinance, but was entitled to operate his business as before. This appeal followed.

### III. ZONING

Zoning has been defined as "the division of a municipality or other local community into districts and the regulation of buildings and structures according to their construction and the nature and extent of their use, or the regulation of land according to its nature and uses." 26 TENN.JUR. *Zoning*, § 1. Zoning statutes, ordinances and regulations are enacted for the purpose of promoting the health, safety, morals or general welfare of the community, and are promulgated in accordance with governmental police powers. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926); *Family Golf of Nashville, Inc. v. Metro. Gov't,* 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997).

A municipality, county, or other unit of local government has no inherent power to enact zoning laws. Such power only exists by virtue of authority delegated by the State. *Smith County Planning Commission v. Hiwassee Village Mobile Home Park,* 304 S.W.3d

302, 309 (Tenn. 2010); *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *421 Corp. v. Metro. Gov't of Nashville & Davidson County,* 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000). The State of Tennessee has given municipalities in this state the power to regulate the use of privately-owned property within their own boundaries through a set of zoning statutes, which among other things empowers those entities to "regulate the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes." Tenn. Code Ann. § 13-7-201(a)(1).

Because a municipality's exercise of its zoning power can prevent a property owner from using his land in a way that would otherwise be lawful, our legislature has established mandatory procedures for municipalities to follow when enacting or enforcing zoning ordinances. These include very specific provisions for input by planning authorities, prior notice to affected parties, public hearing, and review. *See* Tenn. Code Ann. § 13-7-201 et seq.

The division of a municipality into districts for different types of uses, such as residential, commercial and industrial, is meant to govern the future development of those districts. But one section of the zoning statutes directs local governments to protect existing uses of private land from newly enacted zoning regulations that would otherwise force a property owner to discontinue a previously permissible use of his property, through the use of what is commonly referred to as a "grandfather clause."

A grandfather clause or provision is defined as "an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction." Black's Law Dictionary 629 (5th ed. 1979). A grandfather exception must be construed strictly against the party who seeks to come within the exception. *Smith County Planning Commission v. Hiwassee Village Mobile Home Park,* 304 S.W.3d at 310 (citing *Teague v. Campbell County*, 920 S.W.2d 219, 221 (Tenn. Ct. App. 1995)).

Tennessee's grandfather provision for zoning matters is found at Tenn. Code Ann. § 13-7-208, which reads in relevant part,

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial, or business establishment in operation, permitted to operate under zoning

regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

Tenn. Code Ann. § 13-7-208(b)(1).

In the case before us, Mr. Bell concedes that the Town of Smyrna has not expressed any intention to try to prevent him from continuing to operate his furniture store. The record shows in any event that a furniture store is a permitted use under the commercial zoning that his property became subject to upon its annexation into the town of Smyrna, so he does not need the protection of the grandfather clause in order to maintain his right to continue his use of his property as a furniture store. He contends, however, that the particular manner in which he conducts his business, *i.e.*, by parking numerous tractor-trailers on his property for the storage of furniture, is protected by Tenn. Code Ann. § 13-7-208(b) to the same extent as is his right to sell furniture or conduct a commercial enterprise from that same location.

## IV. THE NATURE AND EFFECT OF SMYRNA ORDINANCE § 15-606

Findings of fact by the trial court are reviewed on appeal with a presumption of correctness accorded to those findings unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). Questions of law are reviewed *de novo* with no presumption of correctness afforded to the conclusions of the trial court. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). The primary issue in this case is a question of law: whether or not Mr. Bell's use of tractor-trailers on his property is protected by the grandfather provisions of the zoning statute.

Keeping that issue in mind, we note that not every regulation of activity on private property is a zoning regulation. For example, municipalities are authorized to enact and enforce building, safety and health codes. Tenn. Code Ann. § 6-54-119. They may issue or deny licenses for the sale of liquor. Tenn. Code Ann. § 6-55-401 et al. They may regulate electrical work performed within their boundaries. Tenn. Code Ann. § 6-54-105. They may remove vegetation and debris from private property when they determine that such conditions "endanger the health, safety or welfare of other citizens." *See* Tenn. Code Ann. § 6-54-113.

The town of Smyrna asserts that it did not enact ordinance § 15-606 as part of its zoning code, but rather under its more general police power. The town's purpose is set out within the text of the ordinance itself, which states that it "is intended to minimize undesirable and unsightly conditions, and to ensure compliance with intended advertising regulations." Mr. Bell suggests that aesthetic purposes are not a proper subject for the exercise of the town's police power. He further asserts since Bell Furniture is located in a

-7-

district that is zoned for commercial purposes, it "is not supposed to be in an area that would be photographed for Southern Living."[3] We also note that there was some discussion at trial of the possible dangers of keeping unlocked trailers on unfenced property, which the trial court discounted because there was no proof of any specific hazards inside any of the trailers and because Mr. Bell testified that he always keeps his trailers locked.

In the case of *Cherokee Country Club v. City of Knoxville*, 152 S.W.2d 466 (Tenn. 2004) the Tennessee Supreme Court acknowledged that a municipality's police power enables it to enact regulations concerning the health, safety and welfare of the community without following the strict planning, notice, hearing and review requirements that must accompany its exercise of its zoning powers. It also recognized that under certain circumstances an enactment that is ostensibly unrelated to zoning matters may constitute zoning by other means. The court cautioned that "[a] municipality must not 'evade the protections thrown about the citizen's use of his property by the device of labeling a zoning act a mere exercise of police power.'" *Cherokee Country Club v. City of Knoxville*, 152 S.W.2d at 471-72 (quoting *Ellison v. Fort Lauderdale*, 183 So.2d 193, 195 (Fla. 1966)).

The court noted that other jurisdictions have also had to face the question of how to distinguish a building regulation from a zoning act, and have come up with a variety of approaches to that question. After discussing those various approaches, the court concluded that the most well-reasoned and persuasive approach is to determine whether a regulation or ordinance "substantially affects the property owners' use of land," and to recognize it as a zoning regulation if it does. *Cherokee Country Club v. City of Knoxville*, 152 S.W.2d at 473.

The court stated that "[w]hether a substantial interference with the use of the land exists is largely a case by case determination." *Cherokee County Club v. City of Knoxville*, 152 S.W.3d at 472. The examples it cited of such interference were largely those where enforcement of an ordinance would totally destroy the landowner's ability to use the property as before. These included "ordinances establishing a minimum distance between businesses selling alcohol and residential areas, prohibiting the construction of homes near an airport, imposing moratoria on the issuance of building permits, and changing setback and height

---

[3]Several earlier Tennessee cases stand for the proposition that an exercise of the police power based solely upon aesthetic considerations cannot be sustained. *City of Norris v. Bradford*, 321 S.W.2d 543 (Tenn. 1958); *Hagaman v. Slaughter,* 354 S.W.2d 818 (Tenn. Ct. App. 1961). However, in the more recent case of *State v. Smith*, 618 S.W.2d 474, 476 (Tenn. 1981), our Supreme Court cited the trend in numerous jurisdictions to sustain junkyard regulations as a proper exercise of the police power of a state or local government, "even if scenic or aesthetic considerations have been found to be the only basis for their enactment." The court concluded that "[w]e therefore are of the opinion that in modern society aesthetic considerations may well constitute a legitimate basis for the exercise of police power, depending upon the facts and circumstances." *State v. Smith*, 618 S.W.2d at 477.

restrictions on the construction of new buildings." *Ibid.*

Applying that analysis in *Cherokee Country Club* the Court found that a Knoxville ordinance prohibiting the issuance of demolition permits for any property under consideration for inclusion in a historic district was a zoning regulation because it could permanently bar the plaintiff landowner from using its own property for a purpose that was permitted under its current zoning classification.

Because the facts of the *Cherokee Country Club* case are very different from those of the one before us, we will look to other cases that determined whether a regulation "substantially affects the property owners' use of land." Mr. Bell has directed our attention to the case of *Metro. Gov't of Nashville and Davidson County v. Buchanan*, No. M2004-01716-COA-R3-CV, 2006 WL 249512 (Tenn. Ct. App. Feb. 1, 2006) (no Tenn. R. App. P. 11 application filed), which he claims clearly supports his right to continue his use of tractor-trailers.[4] In that case, this court applied the *Cherokee Country Club* standard and found that a Davidson County ordinance prohibiting the storage of junk metal on residentially zoned property was a zoning ordinance as applied to defendant Buchanan. Despite any similarities between the *Buchanan* case and the one before us, however, we find that their differences are greater.

Hutton Buchanan had been collecting and selling scrap metal from his property in a rural area of Davidson County since the 1950s. The first zoning ordinance for that area was not adopted until the 1970s.[5] A property standards code was enacted in 2000 or 2001 for the residential district into which Mr. Buchanan's property had been placed. One provision of the code prohibited "the open storage of abandoned, unlicensed and inoperable vehicles, scrap metal, building rubbish, trailers and other scrapped material and debris."

In 2003, Mr. Buchanan was served with a civil warrant for violation of the code. After a bench trial, the court ordered him to remove all inoperable vehicles and scrap material from his property. Mr. Buchanan appealed, arguing that the code provision not only involved the condition of his property, but it effectively prohibited him from continuing the scrap metal business he had operated on his property for almost fifty years. This court agreed and ruled that Mr. Buchanan was entitled to continue his scrap business as a pre-existing non-conforming use under the grandfather provision of Tenn. Code Ann. § 13-7-208, and accordingly that he could not be compelled to comply with the local code provisions.

---

[4]The trial court herein specifically relied on the *Buchanan* case in its final order.

[5]In 1963, Davidson County and the City of Nashville implemented a Metropolitan form of government which incorporated the entire county.

The essential distinction between the *Buchanan* case and the case before us is that outdoor storage of materials is an inherent practice of any scrap metal business. Indeed, such businesses are commonly referred to as scrap yards, salvage yards and junkyards. *See Shatz v. Phillips*, 471 S.W.2d 944 (Tenn. 1991); *Hedgepath v. Norton*, 839 S.W.2d 416 (Tenn. Ct. App. 1992); *Rives v. City of Clarksville*, 618 S.W.2d 502 (Tenn. Ct. App. 1981); *State v. Jones*, No. M2005-00619-CCA-R3-CD, 2006 WL 1063329 (Tenn. Ct. Crim. App. Apr. 21, 2006). There can be no doubt that enforcement of the Metro ordinance against Mr. Buchanan would have stripped him of the protection of the grandfather provision and prevented him from continuing to use his property for a scrap metal business.

In contrast, we are unaware of any evidence that using tractor-trailers as storage units is an inherent or necessary trade practice in the furniture industry, and Mr. Bell did not present any evidence at trial to support his bare assertion that without his trailers he would be out of business. We can understand that a merchant might want to avoid the costs and efforts required to comply with a property maintenance ordinance. We can also understand that a furniture retailer might need to keep more furniture in stock than can be displayed on the floor of his showroom and that such stock must be stored somewhere. But that does not inevitably lead us to the conclusion that Mr. Bell would like us to reach.

While the enforcement of the ordinance may affect to some degree the method through which Mr. Bell conducts his business, it is undisputed that the town of Smyrna has no objection to his continuing operation of a furniture store on his property. It simply wants him to comply with an ordinance that applies by its terms to all existing businesses in a commercial zone, and, the town is not expressly seeking the removal of the trailers *per se.* Mr. Bell can comply with the ordinance by moving the trailers behind the property setbacks and enclosing them within an opaque fence. In the alternative, he can remove them and store his excess furniture at some other location.

In sum, we conclude that § 15-606 of the Smyrna Municipal Code is not a zoning ordinance as applied to Bell Furniture, because it does not affect Mr. Bell's use of the land for his business to the degree required by *Cherokee Country Club v. City of Knoxville*. The grandfather provision, therefore, does not operate to excuse him compliance with the ordinance.

## V.

The judgment of the trial court is reversed. We remand this case to the Circuit Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellee, Perry Bell.

_____
PATRICIA J. COTTRELL, JUDGE