NATIONAL USED CARS, INC. v CITY OF KALAMAZOO

1. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—ORDINANCES—
   POLICE POWER—PUBLIC WELFARE—JUNKYARDS.

   A community's desire to enhance the scenic beauty of its neigh-
   borhoods, by means of an ordinance which requires junkyards
   to be concealed from view by a solid eight foot fence, is a
   legitimate feature of the public welfare, enforceable by the
   community through its police power.

2. PLEADING—COMPLAINTS—AMENDING COMPLAINTS—DELAY—BAD
   FAITH—PREJUDICE.

   Mere delay in moving to amend a complaint does not warrant
   denial of the motion to amend the complaint, in the absence of
   a showing of either bad faith or actual prejudice.

Appeal from Kalamazoo, Lucien F. Sweet, J.
Submitted Division 3 April 10, 1975, at Grand
Rapids. (Docket No. 21175.) Decided May 30, 1975.

Complaint by National Used Cars, Inc. against
the City of Kalamazoo to have an ordinance re-
quiring junkyards to be shielded from public view
declared unconstitutional. Judgment for defend-
ant. Plaintiff appeals. Affirmed in part, reversed in
part, and remanded.

*Troff, Lilly, Piatt, File & Doyle* (by *Timothy A.
Kragt*), for plaintiff.

*James F. Bishop,* City Attorney, and *Don M.
Schmidt,* Deputy City Attorney, for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 438–442.
[2] 61 Am Jur 2d, Pleading §§ 145, 169.

Before: T. M. BURNS, P. J., and McGREGOR and D. F. WALSH, JJ.

D. F. WALSH, J. At issue is whether the constitutionality of a city ordinance requiring junkyards to be shielded from view may be upheld on aesthetic grounds alone. Under the authority of the home rule cities act[1] the City of Kalamazoo enacted Ordinance No. 509 which regulates the operation of junkyards within the city limits. The particular section of this enactment which gave rise to the present litigation is set out here in full:

"(a) Any yard used in conjunction with said business shall be shielded from view of any person traveling upon a public right-of-way or any person upon the premises of an adjoining residence, if any, unless this requirement is waived by the owners of such residence, by a solid fence eight (8) feet high and maintained in a sightly condition, and in good repair, free of posted handbills or advertising other than the name and character of the business of the owner thereof."

The plaintiff was notified on May 24, 1973, that his junkyard operation did not meet the screening requirements of the ordinance and that his license would be revoked or not renewed if these deficiencies were not remedied. In connection with this violation the plaintiff, throughout 1973, had several contacts with the city inspector, the junk dealer license hearing board and the Kalamazoo City Commission. The end result was that the

---

[1] The pertinent provision of the home rule cities act, MCLA 117.1 *et seq.;* MSA 5.2071 *et seq.,* is MCLA 117.4i(4); MSA 5.2082(4) which states:

"Each city may in its charter provide:

(4) For the regulation of trades, occupations and amusements within its boundaries, not inconsistent with state and federal laws. and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants."

plaintiff's license was renewed conditionally—due to expire May 20, 1974,—to provide time for compliance with the ordinance.

Plaintiff filed a complaint on February 15, 1974, challenging the power of the city to enact such an ordinance and seeking a temporary restraining order. An *ex parte* order was issued on that date and it was accompanied by an order to show cause why a preliminary injunction should not issue enjoining the city from enforcing the ordinance. By agreement of the parties, however, another order was entered on February 19, 1974, dissolving the temporary restraining order and denying the application for a preliminary injunction. In return for plaintiff's consent to this agreement the city agreed to refrain from enforcing the ordinance during the pendency of this lawsuit.

On or about May 3, 1974, it was brought to the plaintiff's attention that the city had renewed the licenses of nine junk dealers. Since the plaintiff was satisfied that these operators too were in violation of the ordinance, National Used Cars sought to amend its complaint to include a count alleging discriminatory enforcement of the law.

At a hearing on July 2, 1974, in Kalamazoo County Circuit Court, plaintiff's oral motion for leave to amend its complaint was denied and the city's motion for summary judgment, GCR 1963, 117, was granted, the trial court holding the ordinance to be a valid exercise of the city's police power.

Both parties would agree that the instant ordinance provision was enacted solely for aesthetic reasons. It is pointed out in the plaintiff's brief that "[a]ny other logical consideration to protect the health and welfare of the general public could be easily satisfied by an open fence which is not

completely covered with solid wood or metal". But the plaintiff argues that a city's police power, since it must be based on public necessity,[2] should not be invoked in an effort to execute the aesthetic desires of the community. This type of regulation of the use of private property, it is urged, involves an impractical, subjective standard which is entirely unrelated to the public health or general welfare.

It is our opinion that the plaintiff advocates an obsolete and refuted point of view which is based on an overly-restrictive perception of a city's police power.

We are well aware of the traditional judicial reluctance to uphold legislation on aesthetic grounds alone.[3] But we find persuasive the reasoning of the more recent decisions,[4] which espouse the contrary and we believe more modern view. One of these is *Oregon City v Hartke,* 240 Or 35; 400 P2d 255 (1965), where the Oregon Supreme Court sustained the validity of a zoning ordinance which wholly excluded automobile wrecking yards from Oregon City on the sole ground that such use would be offensive to aesthetic sensibilities. The court acknowledged the majority view and then declared:

---

[2] The most popular articulation of this view seems to be *Youngstown v Kahn Brothers Building Co,* 112 Ohio St 654, 661–662; 148 NE 842, 844 (1925).

[3] The plurality view seem to be that an ordinance based on aesthetic consideration alone is invalid. *See* Note, *Beyond the Eye of the Beholder: Aesthetics and Objectivity,* 71 Mich L Rev 1438, 1440–1441 (1973); Leighty, *Aesthetics as a Legal Basis for Environmental Control,* 17 Wayne L Rev 1347, 1373 *et seq.* (1971). *See e.g., State v Brown,* 250 NC 54; 108 SE2d 74, 78 (1959).

[4] Specifically upholding state legislation on aesthetic grounds alone are *Jasper v Commonwealth,* 375 SW2d 709 (Ky, 1964), *State v Buckley,* 16 Ohio St 2d 128; 243 NE2d 66 (1968), *app dismissed,* 395 US 163; 89 S Ct 1647; 23 L Ed 2d 174. For a collection of cases sympathetic to this point of view see Note, *Beyond the Eye of the Beholder: Aesthetics and Objectivity,* 71 Mich L Rev 1438, 1440–1441, fn 12 (1973).

"However, there is a growing judicial recognition of the power of a city to impose zoning restrictions which can be justified solely upon the ground that they will tend to prevent or minimize discordant and unsightly surroundings. This change in attitude is a reflection of the refinement of our tastes and the growing appreciation of cultural values in a maturing society. The change may be ascribed more directly to the judicial expansion of the police power to include within the concept of 'general welfare' the enhancement of the citizen's cultural life." *Oregon City v Hartke,* 240 Or 35, 46–47; 400 P2d 255, 261 (1965).

The concept of police power is neither immutable nor capricious. Rather it must be flexible enough to satisfy the changing demands of society. The modern social conscience includes a need for an environment which reflects certain aesthetic qualities. And a community's desire to enhance the scenic beauty of its neighborhoods by keeping junkyards concealed from view is clearly a legitimate feature of the public welfare. The importance of this objective, in the context of zoning and land use, has been recognized before by our own state Legislature,[5] the Congress[6] and the United States Supreme Court.[7]

We are advised by the plaintiff that an aesthetic standard would be impossible to establish because it involves subjective evaluation. Modern thinking seems to refute this notion however and "recent studies have demonstrated that there is consensus in matters of aesthetics and that aesthetic judgments can be supported by appeal to publicly ascertainable facts". Note, *Beyond the Eye of the*

[5] *See, e.g.,* the junkyard control act, MCLA 252.202; MSA 9.391 (12).

[6] *See* 79 Stat 1030 (1965); 23 USC 136(a).

[7] *See Berman v Parker,* 348 US 26, 32–33; 75 S Ct 98; 99 L Ed 27 (1954), and *Village of Belle Terre v Boraas,* 416 US 1, 9; 94 S Ct 1536, 1541; 39 L Ed 2d 797, 804 (1974).

*Beholder: Aesthetics and Objectivity,* 71 Mich L Rev 1438, 1442 (1973).

We are also cognizant of the often-cited statement found in *Wolverine Sign Works v City of Bloomfield Hills,* 279 Mich 205, 208; 271 NW 823 (1937), that "[a]esthetics may be an incident but cannot be the moving factor [behind land use controls]".[8] But that sentence does not capture the essence of the decision, which reproved the arbitrary action of a city in enacting a very broadly drafted ordinance. On the contrary, we uphold a very specific enactment which requires junkyards to be concealed from view by a solid fence eight feet high.

We turn now to the issue of whether the plaintiff was improperly denied leave to amend its complaint to allege discriminatory enforcement of the ordinance. As previously stated, the original pleading in this matter was filed on February 15, 1974. Trial was set for September 17, 1974. The plaintiff's motion was heard on July 2 and was based on a survey of various junkyard operations by the plaintiff's attorney in May of 1974. The trial judge found that plaintiff was too late with its request and that to permit the amendment "would not be fair".

The record does not demonstrate how the City of Kalamazoo would have been prejudiced by the introduction of the discriminatory enforcement issue at a date two months before the trial was scheduled to begin. And "in the absence of a showing of either bad faith or actual prejudice, mere delay does not warrant denial of a motion to amend". *Ben P Fyke & Sons v Gunter Co,* 390

---

[8] Similar language appeared recently in *Sun Oil Co v City of Madison Heights,* 41 Mich App 47, 53; 199 NW2d 525 (1972). To the extent that this case conflicts with our view, we decline to follow it.

Mich 649, 663–664; 213 NW2d 134 (1973); see also *Borman's Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975).

The trial court's finding with respect to the constitutionality of the ordinance is therefore affirmed and the order denying plaintiff's motion for leave to amend its complaint is vacated. The case is remanded to the circuit court for proceedings consistent with this opinion.