STATE OF NORTH CAROLINA v. MACK H. JONES

No. 3PA82

(Filed 4 May 1982)

1. **Constitutional Law § 13; Counties § 5.1; Municipal Corporations § 30.4— county zoning ordinance—aesthetic consideration only—lawful exercise of police power**

   The trial court erred in quashing a warrant against defendant charging him with failure to erect a fence as required by a county ordinance to enclose his junkyard from an adjacent residential area. The ordinance, which promoted aesthetic values only, did not violate Article I, § 19 of the Constitution of North Carolina and the Fourteenth Amendment to the United States Constitution. The Court in finding the ordinance constitutional expressly overruled previous cases to the extent that they prohibited regulation based upon aesthetic considerations alone and adopted a test stating that the diminution in value of an individual's property should be balanced against the corresponding gain to the public from such regulation. The test focuses on the reasonableness of the regulation by determining whether the aesthetic purpose for which the regulation is reasonably related outweighs the burdens imposed on the private property owner by the regulation.

State v. Jones

2. **Counties § 5.1; Municipal Corporations § 30.3— zoning ordinance—not unconstitutionally vague**

> A zoning ordinance regulating junkyards was not unconstitutionally vague when read contextually as it apprised persons of ordinary intelligence, who desired to know the law and abide by it, what was required by it.

ON defendant's petition for discretionary review, pursuant to G.S. 7A-31, of the decision of the Court of Appeals (*Webb, J.,* with *Hedrick* and *Arnold, JJ.,* concurring), reported at 53 N.C. App. 466, 281 S.E. 2d 91 (1981), reversing and remanding the judgment entered by *Kirby, Judge,* at the 20 October 1980 Session of BUNCOMBE Superior Court.

Defendant was charged in a warrant with a violation of Buncombe County Ordinance 16401 in that he failed to erect a fence as required by the ordinance to enclose his junkyard from the adjacent residential area. Defendant moved to quash the warrant on the grounds that the ordinance upon which the warrant was based was unconstitutional. District Court Judge W. M. Styles quashed the warrant as being unconstitutional on 25 September 1980 and pursuant to the State's appeal Judge Kirby entered an order on 22 October 1980 finding the ordinance unconstitutional and granting the motion to quash. The State appealed to the Court of Appeals which reversed and remanded. In so holding the Court of Appeals expressed the opinion that the trend in the cases decided by this Court indicates that *State v. Brown,* 250 N.C. 54, 108 S.E. 2d 74 (1959), which invalidated G.S. 14-399 as being based on aesthetic considerations alone, no longer governs.

Buncombe County Ordinance No. 16401, after reciting its purposes and objectives and seventeen definitions, states in pertinent part:

SECTION FOUR. PROHIBITIONS

Except as hereinafter provided, it shall be unlawful after the effective date of this Ordinance for any person, firm or corporation, or other legal entity to operate or maintain in any unincorporated area of Buncombe County a junkyard or automobile graveyard within one hundred yards of the center line of any "public road" within one quarter mile of any "school" or within any residential area. For the purposes of this Ordinance, a junkyard or automobile graveyard shall be

within a residential area if there are twenty-five (25) or more housing units within a geographical area comprised of a one-fourth (¼) mile wide strip contiguous and parallel to the external boundary lines of the tract of real property on which said automobile graveyard or junkyard is located.

SECTION FIVE. EXCEPTIONS

A. This Ordinance shall not apply to service stations, repair shops or garages.

B. Junkyards or automobile graveyards may be operated and/or maintained without restrictions if and providing that said junkyard or automobile graveyard shall be entirely surrounded by a fence, or by a wire fence and substantial vegetation of sufficient height and density as to prevent as nearly as is practical any contents of said junkyard from being visible from any public road or residence, taking into consideration the surrounding terrain. The fence or wire fence shall have at least one and not more than two gates for purposes of ingress and egress. The gates shall be closed and securely locked at all times, except during business hours.

In the event that an operator or maintainer of an automobile graveyard or junkyard prohibited herein chooses to surround said automobile graveyard or junkyard with a fence or a wire fence and substantial vegetation as hereinabove provided for, the Environmental Health Services Division of the Buncombe County Health Department shall have the discretion to determine whether or not the said fencing and/or vegetation is substantial and of sufficient height and density as to prevent as nearly as is practical any contents of said automobile junkyards or graveyards from being visible from any public road or residence, taking into consideration the surrounding terrain. The said Environmental Health Services Division shall be available to assist an operator or maintainer of an automobile graveyard or junkyard, upon request by the said operator or maintainor, in the formation of plans for said fencing and/or vegetation. The fence or wire fence and vegetation shall be maintained in good order and shall not be allowed to deteriorate.

*Keith S. Snyder, Buncombe County Attorney, by Stanford K. Clontz, Assistant Buncombe County Attorney, for the State.*

*Penland and Barden, by Stephen L. Barden, III, and Talmage Penland, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant's petition for discretionary review, allowed by this Court on 14 January 1982, presents two questions for review. First, is the ordinance in question unconstitutionally vague, and second, does the ordinance in question violate the "due process" clause of the United States Constitution or the "law of the land" clause of the Constitution of North Carolina because it constitutes an exercise of the police power for aesthetic reasons alone? We will consider these questions in reverse order.

[1] Defendant contends that the ordinance in question violates Article I, § 19 of the Constitution of North Carolina and the Fourteenth Amendment to the United States Constitution. Article I, § 19 of our State Constitution states that:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.

The Fourteenth Amendment to the United States Constitution, § 1, provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

This Court initially considered the question of whether regulation based on aesthetic reasons alone was an unconstitutional exercise of the police powers by the State in requiring the screening from view of certain junkyards in *State v. Brown*, 250 N.C. 54, 108 S.E. 2d 74 (1959). We concluded there that the provi-

sions of G.S. 14-399 conflicted with the rights guaranteed the citizens of this State by Article I, sections 1 and 17 (presently section 19), of the Constitution of North Carolina, commonly referred to as the "law of the land" clause, and held G.S. 14-399 to be unconstitutional. *Brown* recognized that while

> [w]e are in sympathy with every legitimate effort to make our highways attractive and to keep them clean; even so, we know of no authority that vests our courts with the power to uphold a statute or regulation based purely on aesthetic grounds without any real or substantial relation to the public health, safety or morals, or the general welfare.

*Id.* at 59, 108 S.E. 2d at 78.

One year later the holding in *Brown* was reaffirmed in *Restaurant, Inc. v. Charlotte,* 252 N.C. 324, 113 S.E. 2d 422 (1960), wherein an injunction was affirmed prohibiting the enforcement of a Charlotte ordinance which prohibited the maintenance of business signs over sidewalks in a designated area of that city. This Court although acknowledging the presumptive validity of legislative acts stated that:

> Courts are properly hesitant to interfere with a legislative body when it purports to act under the police power, but the exercise of that power must rest on something more substantial than mere aesthetic considerations. If it appears that the ordinance is arbitrary, discriminatory, and based solely on aesthetic considerations, the court will not hesitate to declare the ordinance invalid.

*Id.* at 326, 113 S.E. 2d at 424.

Later in *Horton v. Gulledge,* 277 N.C. 353, 177 S.E. 2d 885, 43 A.L.R. 3d 905 (1970), Justice Lake reiterated the *Brown* holding in dictum in reversing an order of demolition of certain property in Greensboro pursuant to a city ordinance [Housing Code § 10-23(b)] requiring demolition of buildings which could not be brought up to existing Code standards for less than 60% of the value of the building. The *Horton* opinion recognized the United States Supreme Court's view in *Berman v. Parker,* 348 U.S. 26, 33, 99 L.Ed. 27, 38, 75 S.Ct. 98, 102-03 (1954), that "[i]t is within the power of the legislature to determine that the community should

be beautiful as well as healthy, spacious as well as clean, well balanced as well as carefully patrolled;" however, *Horton* noted that the United States Supreme Court's *Berman* decision construing the Fourteenth Amendment's Due Process Clause, while persuasive, did not control this Court's interpretation of the "law of the land" clause in our State Constitution.

In 1972 this Court again speaking through Justice Lake considered a criminal conviction based upon a zoning ordinance which *inter alia* required junkyard owners located in rural, general industrial districts in Forsyth County to erect solid six feet high fences at least fifty feet from the edge of any public road adjoining the yard. This Court noted there that such requirement bore "no substantial relation to the public health, morals or safety such as will sustain the requirement as a legitimate exercise of the police power of the State for any of these purposes." *State v. Vestal*, 281 N.C. 517, 523, 189 S.E. 2d 152, 157 (1972). However, the State did not contend in *Vestal* that aesthetic considerations alone would support an exercise of police power in such a regulatory manner. In acknowledging that the question presented by *State v. Brown, supra*, was not before this Court in *Vestal*, we stated that:

> [w]e express no opinion thereon [validity of such a requirement based upon aesthetic considerations alone], though we note the growing body of authority in other jurisdictions to the effect that the police power may be broad enough to include reasonable regulation of property use for aesthetic reasons only. [Citations omitted.]

*Id.* at 524, 189 S.E. 2d at 157.

Finally, this Court espoused a balancing test applicable in situations involving exercise of the police power in the preservation of historically significant structures in *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979). *A-S-P Associates* concerned a challenge of two Raleigh city ordinances creating a historic district in the Oakwood neighborhood and adopting architectural guidelines and design standards to be applied by a Historic District Commission with provision for civil and criminal penalties for property owners failing to comply with the ordinance. Although noting the *Vestal* acknowledgement of the growing body of authority in other jurisdictions recognizing

that the police power may be broad enough to include reasonable regulation of property for aesthetic reasons alone, we stated that we were not prepared to endorse such a broad concept of the scope of the police power, but we found no difficulty in holding that the police power encompasses the right to control the exterior appearance of private property when the object of such control was the preservation of the State's legacy of historically significant structures. We cited with approval A. Rathkopf, *The Law of Zoning and Planning* § 15.01, p. 15-4 (4th ed. 1975), that historic district zoning is not primarily concerned with aesthetics, but rather with preservation for educational, cultural, and economic values. Thus, the general welfare under the police power is served by such historical preservation ordinances through contributing to economic and social stability, preserving past noteworthy architectural techniques, and promoting tourism revenues. *A-S-P Associates,* 298 N.C. at 216-17, 258 S.E. 2d at 450. However, we were careful to note that such a use of the police power even where "other" considerations were involved could result in depreciation in value of an individual's property or restricting to a certain degree the right to develop it as he deems appropriate and for that reason the police power was not to be exercised with reckless abandon or its exercise approved blindly; to the contrary, we expressed the need to apply a test of reasonableness in such situations involving the "balancing of the diminution in value of an individual's property and the corresponding gain to the public." *Id.* at 218, 258 S.E. 2d at 451. The use of such a balancing test would preclude "carte blanche" approval of the exercise of the police power for any reason including aesthetics alone.

Since our recognition in *State v. Vestal, supra,* of the "growing body of authority" that "the police power may be broad enough to include reasonable regulation of property use for aesthetic reasons only," 281 N.C. at 524, 189 S.E. 2d at 157, there has been a continued erosion of the former majority rule. The former majority rule that aesthetic considerations alone could not support an exercise of police power is now the minority rule. According to one commentator, the balance shifted in 1975 with the result that by 1980 the alignment stood at sixteen jurisdictions (including the District of Columbia) authorizing regulation based

State v. Jones

on aesthetics alone,[1] nine state jurisdictions, including North Carolina, prohibiting regulation based solely on aesthetics,[2] sixteen state jurisdictions where purely aesthetic regulation was an open question,[3] and ten state jurisdictions having no reported cases on aesthetic regulation.[4] Bufford, *Beyond the Eye of the Beholder: A New Majority of Jurisdictions Authorize Aesthetic Regulation*, 48 U.M.K.C. L. Rev. 125 (1980). Indeed by 1980, nine jurisdictions had joined the new majority position since 1972.[5] Our research indicates that since the publication of that law review article one of the "minority" jurisdictions prohibiting regulation based solely on aesthetics has now joined the "majority" jurisdictions authorizing regulation based on aesthetics alone. *State v. Smith*, 618 S.W. 2d 474 (Tenn. 1981).[6] A previously "silent" jurisdiction has now joined the state jurisdictions where regulation based solely on aesthetics is an open question. *Rockdale County v. Mitchell's Used Auto Parts, Inc.*, 243 Ga. 465, 254 S.E. 2d 846 (1979).

With the 1981 Tennessee decision, the new majority includes seventeen jurisdictions where regulation based exclusively upon aesthetics is permissible, while the minority rule is adhered to by eight jurisdictions, including our own.

---

1. California, Colorado, Delaware, District of Columbia, Florida, Hawaii, Massachusetts, Michigan, Mississippi, Montana, New Jersey, New York, Ohio, Oregon, Utah, and Wisconsin.

2. Illinois, Maryland, Nebraska, North Carolina, Rhode Island, Tennessee, Texas, Vermont, and Virginia.

3. Arkansas, Connecticut, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Minnesota, Missouri, New Hampshire, New Mexico, North Dakota, Pennsylvania, Washington, and West Virginia. According to the commentator this group of jurisdictions includes some with cases "authorizing regulation based partially upon aesthetic considerations, but have left open the issues of the validity of regulation supported by no other factors and thus based exclusively upon aesthetic considerations." Bufford, 48 U.M.K.C. L. Rev., *supra* at 127.

4. Alabama, Alaska, Arizona, Georgia, Idaho, Nevada, Oklahoma, South Carolina, South Dakota, and Wyoming, *Id.* at 130-31.

5. California (1979), Colorado (1978), Massachusetts (1975), Michigan (1975), Mississippi (1974), Montana (1977), New Jersey (1974), New York (1977), and Utah (1975). *See id.* at 131-44.

6. Thus, Tennessee became the tenth state jurisdiction to join that "growing body of authority" between 1972 and 1981.

Since 1972 four state jurisdictions have considered regulation of junkyards based solely on aesthetics and concluded that such regulation was valid. *National Used Cars, Inc. v. City of Kalamazoo*, 61 Mich. App. 520, 233 N.W. 2d 64 (1975); *State v. Bernhard*, 173 Mont. 464, 568 P. 2d 136 (1977); *State v. Smith, supra;* and *Buhler v. Stone*, 533 P. 2d 292 (Utah 1975).

*Buhler v. Stone, supra,* involved a county ordinance which prohibited the collection of, among other items, "junk, scrap metal . . . or . . . abandoned . . . vehicles" if such items were "unsightly and in public view." 533 P. 2d at 293. In response to plaintiff's attack upon the ordinance as not within the police powers and in holding the ordinance constitutional, the Utah Supreme Court answered that:

> It is true that the police power is generally stated to encompass regulation of matters pertaining to the health, morals, safety or welfare. But those are generic terms. The promotion of the general welfare does not rigidly limit governmental authority to a policy that would "scorn the rose and leave the cabbage triumphant." Surely among the factors which may be considered in the general welfare, is the taking of reasonable measures to minimize discordant, unsightly and offensive surroundings; and to preserve the beauty as well as the usefulness of the environment.

*Id.* at 294.

The Court of Appeals of Michigan held that a city ordinance requiring that junkyards be shielded from view may be upheld on aesthetic grounds alone in *National Used Cars, Inc. v. City of Kalamazoo, supra.* In noting that the plurality view in 1975 seemed to be that an ordinance based upon aesthetic consideration alone was invalid, the court remarked that:

> [i]t is our opinion that the plaintiff advocates an obsolete and refuted point of view which is based on an overly-restrictive perception of a City's police power.
>
> We are well aware of the traditional judicial reluctance to uphold legislation on aesthetic grounds alone. [Citing *Brown, supra,* in a footnote.] But we find persuasive the reasoning of the more recent decisions, which espouse the contrary and we believe more modern view.

61 Mich. App. at 523, 233 N.W. 2d at 66. That court concluded that "a community's desire to enhance the scenic beauty of its neighborhoods by keeping junkyards concealed from view is clearly a legitimate feature of the public welfare." *Id.* at 524, 233 N.W. 2d at 67. The Michigan court upheld a "very specific enactment" which required junkyards to be concealed from view by a solid fence eight feet high.

A state statute and the regulation promulgated thereunder providing that the license required when a person has four or more junk vehicles at a single location constituting a motor vehicle wrecking facility would not be granted unless the vehicles were shielded from public view was held to be constitutional in *State v. Bernhard, supra.* The Supreme Court of Montana noted that other jurisdictions had taken the view that aesthetic considerations alone may warrant the exercise of the police power regulating motor vehicle junkyards in holding that "a legislative purpose to preserve or enhance aesthetic values is a sufficient basis for the state's exercise of its police power . . . ." 173 Mont. at 468, 568 P. 2d at 138.

Most recently the Tennessee Supreme Court in *State v. Smith, supra,* repudiated its prior adherence to the traditional view that aesthetics alone could not support the exercise of the police power. *Smith* involved a conviction for violating a statute which prohibited the establishment of an automobile junkyard within a specified distance from a state highway and operating such a junkyard without a proper permit or license. This case implicitly overruled Tennessee's former adherence to the traditional view espoused in *City of Norris v. Bradford,* 204 Tenn. 319, 321 S.W. 2d 543 (1958), by stating that

> the views expressed in *City of Norris v. Bradford* . . . must be considered in the light of the facts of that case and that they cannot be literally applied to all of the myriad concerns and problems facing state and local governments at this time . . . . The rule stated in *City of Norris v. Bradford* . . . in our opinion, no longer represents the prevailing view on that subject.

618 S.W. 2d at 477.

The Tennessee court concluded that modern societal aesthetic considerations such as concern for environmental pro-

tection, control of pollution, and prevention of unsightliness may well constitute a legitimate basis for the exercise of the police power. We agree with the rationale expressed in *Smith* and the other decisions representing the new majority.

In light of our 1972 perception in *Vestal* that the trend was growing toward allowing such regulation, the continued shift such that the trend now represents the new majority, and our general agreement with the views expressed in the recent cases above cited, we expressly overrule our previous cases to the extent that they prohibited regulation based upon aesthetic considerations alone. We do not grant blanket approval of all regulatory schemes based upon aesthetic considerations. Rather, we adopt the test expressed in *A-S-P Associates* that the diminution in value of an individual's property should be balanced against the corresponding gain to the public from such regulation. Some of the factors which should be considered and weighed in applying such a balancing test include such private concerns such as whether the regulation results in confiscation of the most substantial part of the value of the property or deprives the property owner of the property's reasonable use, and such public concerns as the purpose of the regulation and the manner in achieving a permitted purpose. 1A. Rathkopf, *The Law of Zoning and Planning* § 4.02, at 4-3 (4th ed. 1982). Aesthetic regulation may provide corollary benefits to the general community such as protection of property values, promotion of tourism, indirect protection of health and safety, preservation of the character and integrity of the community, and promotion of the comfort, happiness, and emotional stability of area residents. *See,* Rowlett, *Aesthetic Regulation Under the Police Power: The New General Welfare and the Presumption of Constitutionality,* 34 Vand. L. Rev. 603 (1981). Such corollary community benefits would be factors to be considered in balancing the public interests in regulation against the individual property owner's interest in the use of his property free from regulation. The test focuses on the reasonableness of the regulation by determining whether the aesthetic purpose to which the regulation is reasonably related outweighs the burdens imposed on the private property owner by the regulation. *Id.* at 649. *See e.g., Berg. Agency v. Township of Maplewood,* 163 N.J. Super. 542, 559, 395 A. 2d 261, 270 (1978). We therefore hold that reasonable regulation based on aesthetic considerations may constitute a valid basis for

the exercise of the police power depending on the facts and circumstances of each case. We feel compelled to caution the local legislative bodies charged with the responsibility for and the exercise of the police power in the promulgation of regulations based *solely* upon aesthetic considerations that this is a matter which should not be delegated by them to subordinate groups or organizations which are not authorized to exercise the police power by the General Assembly.

[2]   Defendant-appellant also challenges the Buncombe County ordinance as being unconstitutionally vague. We think the Court of Appeals' opinion adequately addressed and answered defendant's contentions on this point. In addition, we note that statutory language must of necessity be somewhat general because of the impossibility of describing in minute detail each and every situation or circumstance that the statute or ordinance must encompass. An ordinance or statute must be considered as a whole, and its language should not be isolated in order to find fault with its descriptive character when the general sense and meaning of the statute can be determined from reading such language in proper context and giving the words ordinary meaning. *See Woodhouse v. Board of Commissioners,* 299 N.C. 211, 225-26, 261 S.E. 2d 882, 891 (1980); *State v. Fox,* 262 N.C. 193, 136 S.E. 2d 761 (1964). Statutory language should not be declared void for vagueness unless it is not susceptible to reasonable understanding and interpretation. *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1 (1966).

In our view the ordinance in question when read contextually apprises persons of ordinary intelligence, who desire to know the law and abide by it, what is required by it.

For the reasons here stated, we affirm the Court of Appeals' decision and hold that the ordinance in instant case does not violate Article I, § 19 of the Constitution of North Carolina or the Fourteenth Amendment to the United States Constitution, nor is the language of the ordinance unconstitutionally vague.

Affirmed.