IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-124

 No. COA20-914

 Filed 1 March 2022

 Cumberland County, No. 20 CVS 2879

 DISMAS CHARITIES, INC., Petitioner,

 v.

 THE CITY OF FAYETTEVILLE, NORTH CAROLINA, Respondent, and CYNTHIA
 DOVE and husband, EARLEST DOVE, Respondent-Intervenor.

 Appeal by Petitioner from order entered 3 August 2020 by Judge Mary Ann

 Tally in Cumberland County Superior Court. Heard in the Court of Appeals 22

 September 2021.

 Womble Bond Dickinson (US) LLP, by Amy C. Crout and John C. Cooke, and
 The Michael Porter Law Firm, by Michael R. Porter, for the Petitioner-
 Appellant.

 Poyner Spruill LLP, by Chad W. Essick and Nicolas E. Tosco, and Fayetteville
 City Attorney’s Office, by Karen M. McDonald, for the Respondent-Appellee.

 Ragsdale Liggett PLLC, by Amie C. Sivon and Benjamin R. Kuhn, for the
 Respondent-Intervenor-Appellee.

 DILLON, Judge.

¶1 Petitioner Dismas Charities, Inc. (“Dismas”) appeals an order of the superior

 court affirming the decision of Respondent City of Fayetteville (the “City”) denying

 the issuance of a special use permit for the construction of a halfway house in
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 downtown Fayetteville. The City denied the permit based on its conclusion that

 Dismas did not meet its burden of production to show that its use met a certain

 standard in the City’s ordinance (hereinafter “Standard 7”), which requires a showing

 that the special use sought “allows for the protection of property values and the ability

 of neighboring lands to develop the uses permitted in the zoning district.” We

 conclude that (1) the superior court should have conducted a de novo review, rather

 than applying the whole record test, to determine whether Dismas met its burden of

 production; (2) based on our de novo review, Dismas did meet its burden of production;

 (3) there was no competent, material, substantial evidence offered to counter Dismas’

 evidence; and (4) therefore, the City Council was required to approve Dismas’ permit

 application. Accordingly, we reverse the decision of the superior court and remand

 with instructions to remand to the City Council to approve Dismas’ permit request.

 I. Background

¶2 Like most cities, the City is divided into zoning districts. Its zoning ordinance

 dictates the land uses allowed in each zoning district. For each district, the ordinance

 spells out which uses are permitted as of right; which uses are explicitly prohibited;

 and which uses, called “special uses”, might be permitted. As our Supreme Court has

 described, a use deemed a “special use” is permitted in a zoning district “upon proof

 that certain facts and conditions detailed in the ordinance exist.” PHG Asheville v.

 City of Asheville, 374 N.C. 133, 158, 839 S.E.2d 755, 771 (2020). That is, the zoning
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 ordinance spells out the conditions which must be met for a special use to be

 permitted. Relevant to this case, under the City’s zoning ordinance, the issuance of

 a special use permit requires a showing that the proposed special use meets eight

 specific standards. See Fayetteville, N.C., Code of Ordinances, UDO § 30-2.C.7.e.7.

¶3 Dismas owns a vacant lot in the City in an area designated as an “Office and

 Industrial” (“O&I”) zoning district. Dismas desires to construct a halfway house (the

 “Facility”) on its lot. A halfway house is a residential facility for recently released

 prisoners transitioning back into society and is considered a “special use” in an O&I

 district. Accordingly, Dismas applied to the City for a special use permit.

¶4 The City’s zoning commission recommended approval of the permit. The

 matter was then brought before the elected City Council for a final determination.

¶5 After the public hearing on the matter concluded, the City Council voted to

 deny Dismas a special use permit, by a 5-4 vote, concluding that Dismas failed to

 present sufficient evidence that the Facility satisfied one of the eight standards,

 specifically Standard 7. The denial was memorialized in a written Order.

¶6 Dismas appealed the City’s Order to the superior court. That court affirmed

 the City’s Order denying the permit. Dismas timely appealed to our Court.

 II. Analysis

¶7 In this appeal, we review whether the superior court erred in affirming the

 City’s denial of Dismas’ application for a special use permit. The issue on appeal
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 concerns whether Dismas put forth sufficient evidence to show that its use satisfies

 Standard 7.

¶8 Our Supreme Court recently discussed in detail the law relating to the

 consideration of a special use permit in PHG, instructing as follows:

¶9 First, the city council (or other city board, as designated by the ordinance) must

 determine whether the applicant has met its initial burden of production to show that

 its proposed special use meets each standard in the ordinance. 374 N.C. at 149, 839

 S.E.2d at 765-66 (stating that the city council first “must determine whether an

 applicant has produced competent, material, and substantial evidence tending to

 establish the existence of the facts and conditions which the ordinance requires for

 the issuance of a use permit”). The Court equated the burden of production in this

 context “to the making of the showing necessary [by a plaintiff in a civil trial] to

 overcome a directed verdict motion[.]” Id. at 152, 839 S.E.2d at 767.

¶ 10 If the applicant meets its burden of production with respect to each standard

 and if there is “the absence of competent, material, and substantial evidence tending

 to support [a denial],” then the city council “lack[s] the authority to deny” the

 application. Id. at 155, 839 S.E.2d at 769. That is, our Supreme Court instructs that

 unlike a plaintiff in a civil trial, an applicant for a special use permit who has met its

 burden of production automatically wins if no contrary evidence is offered.
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

¶ 11 Accordingly, where no contrary evidence is presented, a city council’s decision

 rests on whether an applicant has met its burden of production. In such case, the job

 of a reviewing superior court is to determine whether the city council correctly

 determined whether the applicant, indeed, met its burden. In making this

 determination, the superior court reviews the record de novo, as this determination

 is “directed toward the sufficiency of the evidence . . . and [therefore] involves a legal,

 rather than a factual, determination.” Id. at 152, 839 S.E.2d at 767.

¶ 12 Where, however, contrary evidence is produced to rebut an applicant’s

 evidence, the issuance of the special use permit is no longer automatic. In such case,

 the city council must weigh the evidence to determine whether to grant the permit.

 On appeal, the superior court does not review the matter de novo, but rather reviews

 the “whole record” to determine whether the city council’s decision is supported by

 “substantial evidence.” Id. at 150-51, 839 S.E.2d at 766-67.

¶ 13 Our Court’s duty, in either case, is to review the superior court’s order for

 errors of law by first “determining whether the trial court exercised the appropriate

 scope of review,” and next “deciding whether the court did so properly.” Id. at 151,

 839 S.E.2d at 767.

¶ 14 In this case, the City concluded that Dismas did not meet its initial burden of

 production regarding Standard 7 and, therefore, never considered whether any

 contrary evidence was presented. Accordingly, it was the superior court’s job to
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 conduct a de novo review to determine whether Dismas, in fact, did meet its burden

 of production. The superior court, however, conducted a “whole record test” review.

 This was error.

¶ 15 But since the issue regarding the sufficiency of Dismas’ evidence is a question

 of law, we need not remand to the superior court to conduct a de novo review. We can

 make this determination in the first instance. See Mann Media, Inc. v. Randolph

 Cty. Planning Bd., 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002). And based on our review

 of the record, we conclude that Dismas did meet its burden of production regarding

 Standard 7 for the reasoning below.

¶ 16 In our analysis, we first consider the text of Standard 7. Standard 7 requires

 a special use permit applicant to put forth sufficient evidence tending to show that

 The special use allows for the protection of property values
 and the ability of neighboring lands to develop the uses
 permitted in the zoning district.

¶ 17 The City argues that the language in Standard 7 should be construed similarly

 to ordinances construed in other cases, such as Kenan v. Board of Adjustments, 13

 N.C. App. 688, 187 S.E.2d 496 (1972), which requires that the proposed special use

 not “substantially injure the value of adjoining or abutting property.” Our Supreme

 Court in PHG has instructed that this “substantially injure” language requires a

 showing that the proposed use not cause the values of nearby properties to decrease

 substantially. 374 N.C. at 155, 839 S.E.2d at 770.
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

¶ 18 However, the phrase “allows for the protection of property values” found in

 Standard 7 differs from the “substantially injure adjoining or abutting property”

 language found in other ordinances in at least two ways. First, whereas Kenan-type

 ordinances are concerned specifically with the impact on values of “adjoining or

 abutting properties,” Standard 7 is concerned with “property values” generally. See,

 e.g., State v. Jones, 305 N.C. 520, 530, 290 S.E.2d 675, 681 (1982) (stating that an

 ordinance requiring a degree of aesthetics in a development may be valid where it

 provides “corollary benefits to the general community such as protection of property

 values” (emphasis added)). The only specific concern regarding nearby properties in

 Standard 7 is the impact the proposed special use will have on the ability of the

 nearby property owners to use their properties consistent with their zoning.

¶ 19 Second, Standard 7 does not contain the “substantially injure” language, but

 merely requires the applicant to show that its use “allows for the protection of”

 property values. Our Supreme Court has held that aesthetics-type development

 ordinances, such as ordinances dealing with “environmental protection, control of

 pollution, and prevention of unsightliness” provide for the “protection of property

 values.” Id. at 529-30, 290 S.E.2d at 680. And our Court has held that an ordinance

 prohibiting a certain type of lower quality construction allows for the “protection of

 property values.” Duggins v. Walnut, 63 N.C. App. 684, 688, 306 S.E.2d 186, 189

 (1983).
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

¶ 20 Merriam Webster defines the phrase “to allow for” as “to think about” or “to

 consider (something) when one makes a calculation.” Merriam-Webster,

 https://www.merriam-webster.com/dictionary/allow%20for (visited Jan. 11, 2022).

¶ 21 We, therefore, conclude that the language in Standard 7 does not require an

 applicant to show that its special use will not cause nearby property values to

 decrease significantly. Rather, Standard 7 requires that an applicant show that it

 has incorporated “reasonable” elements in its planned special use which provide the

 benefit of the protection of property values generally. See Jones, 305 N.C. at 530-31,

 290 S.E.2d at 681 (holding an ordinance requiring certain aesthetics considerations

 to be satisfied is valid where the ordinance is “reasonable”).

¶ 22 We have reviewed the record and conclude that Dismas did meet its burden of

 production regarding Standard 7. It is true that Dismas did not offer expert

 testimony from appraisers (or any other expert) regarding the effect its Facility would

 have on adjacent property values. However, unlike a Kenan-type ordinance,

 Standard 7 does not speak to the effect of a special use on nearby property values.

¶ 23 And in this matter, the record before the City Council did contain evidence of

 elements that will be incorporated in the Facility which our courts have stated

 provide for the protection of property values. In its application, which was before the

 City Council, Dismas stated as follows:

 Dismas Charities constructs attractive, high-quality
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 commercial grade buildings and maintains them to the
 highest standards. The facilities are operated 24 hours per
 day/7 days per week by professional, well-trained staff.
 Residents are closely monitored & supervised and are
 classified as “community custody level” which is the lowest
 custody level in the Federal Corrections system. The
 Dismas Charities facility would be an asset to the
 community and would not negatively affect values or
 development potential of neighboring properties as
 permitted within the zoning district. See Exhibit F-3D
 Rendering of Proposed Facility Design.

 Other portions of the application and other evidence provided pertinent information

 tending to show as follows: (1) environmental pollution will be low; (2) the building

 will be only one-story, to make it compatible with adjacent structures; (3) the building

 is located behind the building setback lines; (4) the building will be screened from

 adjacent residential zones with landscape buffers; and (5) the parking area will be

 fenced and private and will be planted and screened with a commercial screening

 buffer. The evidence also tended to show that the Facility would not limit how

 neighboring property owners could legally use their property.

¶ 24 We further conclude that no contrary competent, material, substantial

 evidence came before the City Council to counter Dismas’ evidence. It is true that

 citizens came before the City Council expressing their desire not to have a halfway

 house in their neighborhood. However, none produced testimony or evidence tending

 to show that Dismas’ evidence was not credible; that there were other reasonable

 steps Dismas could take to protect property values generally; or that the Facility
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 would limit the way they could use their properties. And there is nothing in the

 record tending to show that a member of the City Council had specialized knowledge

 to counter Dismas’ evidence. See PHG, 374 N.C. at 156-57, 839 S.E.2d at 770

 (recognizing that the city council members may “rely upon [their] special knowledge”).

¶ 25 Dismas produced more than “a scintilla” of evidence that they satisfied

 Standard 7. See id. at 152, 839 S.E.2d at 767 (“substantial evidence is more than a

 mere scintilla”).

 III. Conclusion

¶ 26 The City’s zoning ordinance allows Dismas to use its O&I tract as a hospital, a

 community center, a fraternity house, a motel, a fire station, or a police station,

 among other uses without a special use permit. The neighboring property owners

 were on notice of these use rights. The ordinance also allows Dismas to use its

 property as a halfway house, provided that Dismas shows that this use meets eight

 standards set forth in the ordinance.

¶ 27 The City Council denied Dismas a special use permit to develop the Facility,

 solely on the basis that Dismas did not meet its burden of production regarding

 Standard 7. The superior court erred in applying the whole record test in evaluating

 the City Council’s determination and should have reviewed the matter de novo.

 Based on our de novo review, we conclude that Dismas did meet its burden of
 DISMAS CHARITIES V. THE CITY OF FAYETTEVILLE

 2022-NCCOA-124

 Opinion of the Court

 production. We further conclude that no competent, material, substantial evidence

 was offered to counter Dismas’ evidence.

¶ 28 We, therefore, conclude that the City Council was required to issue Dismas’

 permit. Accordingly, we reverse the order of the superior court and remand with

 instructions to remand the matter to the City Council for the issuance of the special

 use permit.

 REVERSED AND REMANDED.

 Judges COLLINS and WOOD concur.