IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-124

No. COA20-914

Filed 1 March 2022

Cumberland County, No. 20 CVS 2879

DISMAS CHARITIES, INC., Petitioner,

v.

THE CITY OF FAYETTEVILLE, NORTH CAROLINA, Respondent, and CYNTHIA DOVE and husband, EARLEST DOVE, Respondent-Intervenor.

Appeal by Petitioner from order entered 3 August 2020 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 22 September 2021.

> *Womble Bond Dickinson (US) LLP, by Amy C. Crout and John C. Cooke, and The Michael Porter Law Firm, by Michael R. Porter, for the Petitioner-Appellant.*
>
> *Poyner Spruill LLP, by Chad W. Essick and Nicolas E. Tosco, and Fayetteville City Attorney's Office, by Karen M. McDonald, for the Respondent-Appellee.*
>
> *Ragsdale Liggett PLLC, by Amie C. Sivon and Benjamin R. Kuhn, for the Respondent-Intervenor-Appellee.*

DILLON, Judge.

¶ 1    Petitioner Dismas Charities, Inc. ("Dismas") appeals an order of the superior court affirming the decision of Respondent City of Fayetteville (the "City") denying the issuance of a special use permit for the construction of a halfway house in

downtown Fayetteville. The City denied the permit based on its conclusion that Dismas did not meet its burden of production to show that its use met a certain standard in the City's ordinance (hereinafter "Standard 7"), which requires a showing that the special use sought "allows for the protection of property values and the ability of neighboring lands to develop the uses permitted in the zoning district." We conclude that (1) the superior court should have conducted a *de novo* review, rather than applying the whole record test, to determine whether Dismas met its burden of production; (2) based on our *de novo* review, Dismas did meet its burden of production; (3) there was no competent, material, substantial evidence offered to counter Dismas' evidence; and (4) therefore, the City Council was required to approve Dismas' permit application. Accordingly, we reverse the decision of the superior court and remand with instructions to remand to the City Council to approve Dismas' permit request.

## I. Background

Like most cities, the City is divided into zoning districts. Its zoning ordinance dictates the land uses allowed in each zoning district. For each district, the ordinance spells out which uses are permitted *as of right*; which uses are *explicitly prohibited*; and which uses, called "special uses", *might be permitted*. As our Supreme Court has described, a use deemed a "special use" is permitted in a zoning district "upon proof that certain facts and conditions detailed in the ordinance exist." *PHG Asheville v. City of Asheville*, 374 N.C. 133, 158, 839 S.E.2d 755, 771 (2020). That is, the zoning

ordinance spells out the conditions which must be met for a special use to be permitted. Relevant to this case, under the City's zoning ordinance, the issuance of a special use permit requires a showing that the proposed special use meets eight specific standards. *See* Fayetteville, N.C., Code of Ordinances, UDO § 30-2.C.7.e.7.

Dismas owns a vacant lot in the City in an area designated as an "Office and Industrial" ("O&I") zoning district. Dismas desires to construct a halfway house (the "Facility") on its lot. A halfway house is a residential facility for recently released prisoners transitioning back into society and is considered a "special use" in an O&I district. Accordingly, Dismas applied to the City for a special use permit.

The City's zoning commission recommended approval of the permit. The matter was then brought before the elected City Council for a final determination.

After the public hearing on the matter concluded, the City Council voted to deny Dismas a special use permit, by a 5-4 vote, concluding that Dismas failed to present sufficient evidence that the Facility satisfied one of the eight standards, specifically Standard 7. The denial was memorialized in a written Order.

Dismas appealed the City's Order to the superior court. That court affirmed the City's Order denying the permit. Dismas timely appealed to our Court.

## II. Analysis

In this appeal, we review whether the superior court erred in affirming the City's denial of Dismas' application for a special use permit. The issue on appeal

concerns whether Dismas put forth sufficient evidence to show that its use satisfies Standard 7.

¶ 8 Our Supreme Court recently discussed in detail the law relating to the consideration of a special use permit in *PHG*, instructing as follows:

¶ 9 First, *the city council* (or other city board, as designated by the ordinance) must determine whether the applicant has met its initial burden of production to show that its proposed special use meets each standard in the ordinance. 374 N.C. at 149, 839 S.E.2d at 765-66 (stating that the city council first "must determine whether an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a use permit"). The Court equated the burden of production in this context "to the making of the showing necessary [by a plaintiff in a civil trial] to overcome a directed verdict motion[.]" *Id.* at 152, 839 S.E.2d at 767.

¶ 10 If the applicant meets its burden of production with respect to each standard *and* if there is "the absence of competent, material, and substantial evidence tending to support [a denial]," then the city council "lack[s] the authority to deny" the application. *Id.* at 155, 839 S.E.2d at 769. That is, our Supreme Court instructs that *unlike* a plaintiff in a civil trial, an applicant for a special use permit who has met its burden of *production* automatically wins if no contrary evidence is offered.

¶ 11     Accordingly, where no contrary evidence is presented, a city council's decision rests on whether an applicant has met its burden of production. In such case, the job of a reviewing *superior court* is to determine whether the city council correctly determined whether the applicant, indeed, met its burden. In making this determination, the superior court reviews the record *de novo*, as this determination is "directed toward the sufficiency of the evidence . . . and [therefore] involves a legal, rather than a factual, determination." *Id.* at 152, 839 S.E.2d at 767.

¶ 12     Where, however, contrary evidence is produced to rebut an applicant's evidence, the issuance of the special use permit is no longer automatic. In such case, the city council *must weigh the evidence* to determine whether to grant the permit. On appeal, the superior court does not review the matter *de novo*, but rather reviews the "whole record" to determine whether the city council's decision is supported by "substantial evidence." *Id.* at 150-51, 839 S.E.2d at 766-67.

¶ 13     *Our* Court's duty, in either case, is to review the superior court's order for errors of law by first "determining whether the trial court exercised the appropriate scope of review," and next "deciding whether the court did so properly." *Id.* at 151, 839 S.E.2d at 767.

¶ 14     In this case, the City concluded that Dismas did not meet its initial burden of production regarding Standard 7 and, therefore, never considered whether any contrary evidence was presented. Accordingly, it was the superior court's job to

conduct a *de novo* review to determine whether Dismas, in fact, did meet its burden of production. The superior court, however, conducted a "whole record test" review. This was error.

¶ 15 But since the issue regarding the sufficiency of Dismas' evidence is a question of law, we need not remand to the superior court to conduct a *de novo* review. We can make this determination in the first instance. *See Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002). And based on our review of the record, we conclude that Dismas did meet its burden of production regarding Standard 7 for the reasoning below.

¶ 16 In our analysis, we first consider the text of Standard 7. Standard 7 requires a special use permit applicant to put forth sufficient evidence tending to show that

> The special use allows for the protection of property values
> and the ability of neighboring lands to develop the uses
> permitted in the zoning district.

¶ 17 The City argues that the language in Standard 7 should be construed similarly to ordinances construed in other cases, such as *Kenan v. Board of Adjustments*, 13 N.C. App. 688, 187 S.E.2d 496 (1972), which requires that the proposed special use not "substantially injure the value of adjoining or abutting property." Our Supreme Court in *PHG* has instructed that this "substantially injure" language requires a showing that the proposed use not cause the values of nearby properties *to decrease* substantially. 374 N.C. at 155, 839 S.E.2d at 770.

¶ 18    However, the phrase "allows for the protection of property values" found in Standard 7 differs from the "substantially injure adjoining or abutting property" language found in other ordinances in at least two ways. First, whereas *Kenan*-type ordinances are concerned specifically with the impact on values of "*adjoining or abutting* properties*,*" Standard 7 is concerned with "property values" generally. *See, e.g., State v. Jones*, 305 N.C. 520, 530, 290 S.E.2d 675, 681 (1982) (stating that an ordinance requiring a degree of aesthetics in a development may be valid where it provides "corollary benefits *to the general community* such as protection of property values" (emphasis added)). The only specific concern regarding *nearby* properties in Standard 7 is the impact the proposed special use will have on the ability of the nearby property owners to use their properties consistent with their zoning.

¶ 19    Second, Standard 7 does not contain the "substantially injure" language, but merely requires the applicant to show that its use "allows for the protection of" property values. Our Supreme Court has held that aesthetics-type development ordinances, such as ordinances dealing with "environmental protection, control of pollution, and prevention of unsightliness" provide for the "protection of property values." *Id.* at 529-30, 290 S.E.2d at 680. And our Court has held that an ordinance prohibiting a certain type of lower quality construction allows for the "protection of property values." *Duggins v. Walnut*, 63 N.C. App. 684, 688, 306 S.E.2d 186, 189 (1983).

¶ 20       Merriam Webster defines the phrase "to allow for" as "to think about" or "to consider (something) when one makes a calculation." Merriam-Webster, https://www.merriam-webster.com/dictionary/allow%20for (visited Jan. 11, 2022).

¶ 21       We, therefore, conclude that the language in Standard 7 does *not* require an applicant to show that its special use will not cause nearby property values to decrease significantly. Rather, Standard 7 requires that an applicant show that it has incorporated "reasonable" elements in its planned special use which provide the benefit of the protection of property values generally. *See Jones*, 305 N.C. at 530-31, 290 S.E.2d at 681 (holding an ordinance requiring certain aesthetics considerations to be satisfied is valid where the ordinance is "reasonable").

¶ 22       We have reviewed the record and conclude that Dismas did meet its burden of production regarding Standard 7. It is true that Dismas did not offer expert testimony from appraisers (or any other expert) regarding the effect its Facility would have on adjacent property values. However, unlike a *Kenan*-type ordinance, Standard 7 does not speak to the effect of a special use on nearby property values.

¶ 23       And in this matter, the record before the City Council did contain evidence of elements that will be incorporated in the Facility which our courts have stated provide for the protection of property values. In its application, which was before the City Council, Dismas stated as follows:

>                Dismas   Charities   constructs   attractive,   high-quality

> commercial grade buildings and maintains them to the highest standards. The facilities are operated 24 hours per day/7 days per week by professional, well-trained staff. Residents are closely monitored & supervised and are classified as "community custody level" which is the lowest custody level in the Federal Corrections system. The Dismas Charities facility would be an asset to the community and would not negatively affect values or development potential of neighboring properties as permitted within the zoning district. See *Exhibit F-3D Rendering of Proposed Facility Design*.

Other portions of the application and other evidence provided pertinent information tending to show as follows: (1) environmental pollution will be low; (2) the building will be only one-story, to make it compatible with adjacent structures; (3) the building is located behind the building setback lines; (4) the building will be screened from adjacent residential zones with landscape buffers; and (5) the parking area will be fenced and private and will be planted and screened with a commercial screening buffer. The evidence also tended to show that the Facility would not limit how neighboring property owners could legally use their property.

¶ 24    We further conclude that no contrary competent, material, substantial evidence came before the City Council to counter Dismas' evidence. It is true that citizens came before the City Council expressing their desire not to have a halfway house in their neighborhood. However, none produced testimony or evidence tending to show that Dismas' evidence was not credible; that there were other reasonable steps Dismas could take to protect property values generally; or that the Facility

would limit the way they could use their properties. And there is nothing in the record tending to show that a member of the City Council had specialized knowledge to counter Dismas' evidence. *See PHG*, 374 N.C. at 156-57, 839 S.E.2d at 770 (recognizing that the city council members may "rely upon [their] special knowledge").

¶ 25 Dismas produced more than "a scintilla" of evidence that they satisfied Standard 7. *See id.* at 152, 839 S.E.2d at 767 ("substantial evidence is more than a mere scintilla").

## III. Conclusion

¶ 26 The City's zoning ordinance allows Dismas to use its O&I tract as a hospital, a community center, a fraternity house, a motel, a fire station, or a police station, among other uses *without* a special use permit. The neighboring property owners were on notice of these use rights. The ordinance also allows Dismas to use its property as a halfway house, provided that Dismas shows that this use meets eight standards set forth in the ordinance.

¶ 27 The City Council denied Dismas a special use permit to develop the Facility, solely on the basis that Dismas did not meet its burden of production regarding Standard 7. The superior court erred in applying the whole record test in evaluating the City Council's determination and should have reviewed the matter *de novo*. Based on our *de novo* review, we conclude that Dismas did meet its burden of

production. We further conclude that no competent, material, substantial evidence was offered to counter Dismas' evidence.

We, therefore, conclude that the City Council was required to issue Dismas' permit. Accordingly, we reverse the order of the superior court and remand with instructions to remand the matter to the City Council for the issuance of the special use permit.

REVERSED AND REMANDED.

Judges COLLINS and WOOD concur.